JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
VINCENT A. SHEPERIS

## DEFENDANTS
SIG SAUER, INC.

**(b)** County of Residence of First Listed Plaintiff: Fairfield
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey S. Bagnell, Esq., LLC
55 Greens Farms Road, #200-60
Westport, Connecticut 06880, 203 984 8820

Attorneys *(If Known)*
Robert L. Joyce, Esq.
Littleton Joyce
4 Manhattanville Road, Ste 202, Purchase NY 10577, 914 417 3412

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- ☒ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 28 U.S.C. section 1332
Brief description of cause: Action seeking damages and equitable relief for damages caused by defective firearm

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ >1 million as to each count
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: _____
DOCKET NUMBER: _____

DATE: August 4, 2017
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT A. SHEPERIS, | CIVIL ACTION NO.: |
| Plaintiff, | |
| v. | |
| SIG SAUER, INC. | JURY TRIAL DEMANDED |
| Defendant. | AUGUST 4, 2017 |

## COMPLAINT

## NATURE OF ACTION

This action seeks recovery of compensatory and punitive damages, and equitable relief, caused by defendant Sig Sauer, Inc.'s negligent manufacture and/or design of a semi-automatic firearm. Specifically, a semi-automatic pistol model known as the "P320."

On January 5, 2017 the plaintiff, a member of the Stamford Police Department's Special Response Team (SRT), accidentally dropped his Department-issued P320 while loading SRT equipment into the rear of his vehicle. Upon impact with the ground, the pistol discharged, without the trigger being pulled,[1] shooting him in his left leg, causing substantial physical harm, emotional distress, sleeplessness, and mental trauma. At the time of its descent to the ground and the discharge, Sheperis's pistol was, further, fully holstered. The trigger was therefore

---

[1] In the weapons industry, this type of discharge is typically referred to as an inadvertent or unintended discharge, or "drop fire" in which the weapon fires without a trigger pull. *See, e.g., O'Neal v. Remington Arms Co., LLC*, 817 F.3d 1055, 1060 (8th Cir. 2015) (referring to "inadvertent discharge" of weapon "without the trigger being pulled").

incapable of being touched or of any movement.

The weapon should never have discharged upon mere impact with the ground, holstered or un-holstered. In its own "Safety Without Compromise" marketing materials for the P320, SIG SAUER states:

> "We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."

Under these circumstances, SIG SAUER is liable for this incident under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m and 52-572n, which includes, on a unified basis, claims for strict liability, negligence, misrepresentation, punitive damages and breach of implied and express warranty. Plaintiff Sheperis also brings a separate cause of action seeking compensatory and punitive damages under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), for unfair and deceptive trade practices in their marketing of the weapon, as further described below, as well as a cause of action under Connecticut common law for negligent infliction of emotional distress.

## JURISDICTION

1. Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff Vincent Sheperis is a citizen of the United States and the State of Connecticut. Defendant Sig Sauer, Inc. has a principal place of business in New Hampshire. The amount in controversy exceeds, exclusive of interest and costs, $75,000.

## VENUE

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2). A substantial part of the events or omissions giving rise to the plaintiff's claims occurred within this judicial district.

## PARTIES

3. Vincent A. Sheperis is 34-year-old citizen of the United States who currently is domiciled in Connecticut. He has been member of the Stamford, Connecticut police department since September 2006. He has been a member of the Department's Special Response Team (SRT), known in other contexts as Special Weapons and Tactics, since 2011. He has never received discipline during his entire career.

4. Sig Sauer, Inc. designs and manufactures firearms for military, law enforcement, and commercial markets worldwide. It offers pistols, rifles, short barrel rifles, Sig Sauer Mastershop series, and firearms accessories; and apparel, CD/DVD training, and knives. The company also provides customized training in security subjects for corporate customers and law enforcement agencies on a contract basis.

It markets and sells its products through dealers. Sig Sauer, Inc. was formerly known as SIGARMS, Inc. and changed its name to SIG SAUER, Inc. in October 2007. The company was founded in 1985 and is headquartered in Exeter, New Hampshire.

## ALLEGATIONS

5. The discharge at issue occurred when Officer Sheperis accidentally dropped his fully-holstered P320 on the ground in the Department's Special Response Team bay parking area in Stamford, Connecticut on January 5, 2017.

6. The weapon's impact with the ground resulted in an unintended discharge, striking Officer Sheperis, a Special Response Team member, in his left leg.

7. The weapon's internal and external safeties all failed to prevent it from discharging and shooting Officer Sheperis.

8. The bullet entered beneath his left knee, traversed the tissue and part of a

3

tendon behind his patella, and lodged slightly to the left of his knee with the round protruding from his leg.

9. Fellow officers and EMS took Officer Sheperis to the emergency room at Stamford Hospital where he was operated on by two trauma surgeons.

10. While the full extent of the physical damage to his knee and leg is not yet known, the incident has resulted in substantial physical harm and related mental trauma to Officer Sheperis, who was completely out of work thereafter, then placed on light duty due to loss of function from the wound, then put out of work again after an additional surgery.

11. It has also thus far resulted in physical therapy, and additional surgery to repair the damage caused by the discharged round.

12. Officer Sheperis's P320 pistol discharged on mere impact with the ground, without the trigger being pulled or even touched, which defendant SIG represented was not possible in marketing materials for the P320.

12. It also discharged while it was fully holstered in a Model 6360 ALS/SLS Mid Ride, Level III Retention Duty Holster, which attaches to, and detaches from, a mid-thigh area mount worn by Special Response Team members.

13. Because it was holstered, the trigger was protected from any movement upon impact with the ground, in addition to the protection provided by the pistol's own trigger guard and internal safeties which failed to prevent the weapon from firing.

14. At no time before, during or after the incident did Officer Sheperis place his finger on the P320's trigger or touch the holstered firearm in any manner.

15. In a Supplemental Report dated January 5, 2017, Officer Sheperis stated: "[a]t

4

no time from when the firearm secured within the holster fell from my person, to when it struck the ground, or while I was waiting for assistance did I touch my firearm."

16. In additional marketing material, under the heading "Striker Safety," defendant SIG SAUER further states: The Striker Safety "[p]revents the striker from being released *unless the trigger is pulled*." (emphasis added).

17. At the same time, SIG SAUER contradictorily states in the manual for the P320, on page 25, that the weapon may fire if dropped without the trigger being pulled if the chamber is not empty. It is, however, standard operating procedure for all U.S. law enforcement agencies, local police departments, and the military to carry pistols with a chambered round.

18. Officer Sheperis and his employer the Stamford Police Department reasonably relied on these marketing statements, as well as SIG's reputation for producing high quality weapons, when it purchased the P320.

19. The Department has since shelved all P320s issued to its Special Response Team Operators due to the January 2017 incident.

20. The P320 is a pistol model no doubt currently in use, or soon to be in use, by many other police departments around the nation, as well as the United States Army.

21. Further, upon information and belief, there have been many prior incidents of unintended discharges involving Sig Sauer weapons that are dropped and fire without the trigger being pulled, or simply while being handled, or while being holstered.

22. For example, from 2005 to January 2011, the San Francisco Police Department reported 29 accidental discharges (a time when it issued SIG Sauers as its primary sidearm).

23. In 2002, a San Fernando police officer dropped his SIG Sauer, causing an accidental discharge that killed him, refuting claims the trigger must be pulled to fire the gun.

5

24. In 2008, an officer in Connecticut accidentally discharged his SIG Sauer while holstering it.

25. In 2011, a security guard in St. Louis dropped his SIG Sauer, unintentionally shooting someone.

26. In 2012, a New York transit officer accidentally discharged his SIG Sauer while holstering it.

27. In 2014, a federal air marshal in New Jersey unintentionally shot himself while handling his SIG Sauer service weapon.

28. In 2015, a Pennsylvania state trooper and firearms instructor accidentally killed another trooper with his SIG Sauer while conducting safety training.

29. In 2016, a tactical response training instructor near Sacramento dropped his SIG Sauer, firing a bullet into a student's truck.

30. In 2017, a sheriff's deputy in Michigan accidentally discharged his SIG Sauer, striking a schoolteacher in the neck.

31. In the period between 2012 and 2015, the New York City Police Department reported 10 accidental discharges involving Sig Sauer weapons.

32. On August 16, 2017, the Dallas Police Department issued a recall of the P320 due to drop safety concerns, prohibiting its use by officers until repaired. In an interdepartmental memo, it stated:

> Sig Sauer has identified that there is a defect in the P320 handgun that could cause the weapon system to go off when dropped. The Sig Sauer P320 was approved for primary duty, secondary primary duty, and back-up use. The Firearms Training Center is currently working with Sig Sauer to obtain a solution for the safety issue. Until Sig Sauer is able to find a solution to the safety issue, the Sig Sauer P320 is no longer approved by the Dallas Police Department for any use.

33. Upon information and belief, employees at Sig Sauer's own training academy in New Hampshire have admitted to accidental discharges causing injury in both 2016 and 2017.

34. In an interview in 2013, Sig's Chief Financial Officer, Timothy Scullin, noted that Sig's revenue rose approximately 1,400 percent from 2012 to 2013 and stated that Sig Sauer's Growth has outpaced its industry's growth by "two or three times."

35. When asked what some of his biggest professional challenges he has faced in his career, he stated:

> At SIG, to grow this fast, people get really challenged. When you're growing 70 to 80 percent in a year, **all the systems get stretched, and the people really get stretched**. You have to be able to manage multiple tasks in a very fast environment, and in an environment that's highly regulated, so you can't mess up, otherwise you get shut down. It just creates a tremendous of stress on the people in the system. But we've got people that have risen to the challenge.

(emphasis added).

## COUNT ONE

## VIOLATION OF CONNECTICUT PRODUCTS LIABILITY ACT (CPLA)

### Conn. Gen. Stat. §§ 52-572m and 52-572n

36. Paragraphs one through 35 are incorporated by reference.

37. By its actions, in producing a weapon with a design and/or manufacturing defect, defendant Sig Sauer has violated the provisions of the CPLA.

38. Defendant is liable to Sheperis under CPLA under theories of strict liability, negligence, misrepresentation, punitive damages and breach of implied and express warranty.

39. The defendant's violation of CPLA, and prior instances of producing faulty firearms, has been the proximate and foreseeable cause of physical harm andsubstantial compensatory and

actual damages to Sheperis, entitling him to recover compensatory and punitive damages.

## COUNT TWO

### VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT

### Conn. Gen. Stat. § 42-110a et seq.

40. Paragraphs one through 39 incorporated by reference.

41. By its actions, in representing in its marketing materials that the P320 will not fire unless the trigger is pulled, while simultaneously stating in the weapon's manual that it may discharge if merely dropped, without the trigger being pulled, defendant has engaged in unfair and deceptive trade practices in violation of CUTPA.

42. The defendant's violation of CUTPA has been the proximate and foreseeable cause of physical harm and substantial compensatory and actual damages to Sheperis, entitling him to recover compensatory and punitive damages.

## COUNT THREE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

43. Paragraphs one through 42 are incorporated by reference.

44. By its actions, defendant knew, or should have known, that the design and/or manufacturing defect in the P320 rendered it capable of discharging without the trigger being pulled. Yet is presented to the Stamford Police Department and Sheperis, and the general public, in marketing materials that numerous safeties would prevent the gun from firing unless the trigger was pulled.

45. Defendant's conduct created an unreasonable risk of causing the plaintiff emotional

8

distress;

46. The plaintiff's emotional distress was foreseeable;

47. The emotional distress was severe enough that it might result in illness or bodily harm, and in fact did result in such harm;

48. The defendant's conduct was the cause of the plaintiff's distress.

49. The trigger was not pulled by Sheperis, yet the weapon still fired and shot him in the leg.

50. The defendant's tortiouus conduct has been the proximate cause of substantial compensatory and actual damages to Sheperis, including emotional distress, sleeplessness, post-traumatic stress, and loss of function, entitling him to recover compensatory and punitive damages under Connecticut common law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this case;

2. Empanel a jury;

3. Award actual and compensatory damages in the amount of $1 million or in any other amount determined by a jury for defendant's violation of the CPLA;

4. Award $2 million in punitive damages for defendant's violation of the CPLA;

5. Award actual and compensatory damages in the amount of $1 million or in any other amount determined by a jury for defendant's violation of CUTPA;

6. Award $2 million in punitive damages for defendant's violation of CUTPA;

7. Award $1 million in compensatory damages under Connecticut common law for negligent infliction of emotional distress;

8. Award plaintiff costs and reasonable attorneys' fees in bringing this action;

9. Order defendant to issue a recall notice or other enhanced, unambiguous warning to all purchasers of the P320 stating that the weapon is not drop safe with a chambered round, and can fire without a trigger pull;

10. Retain jurisdiction over this case until defendant has complied with all orders of the Court;

11. Award such other relief as the Court deems appropriate.

The plaintiff demands a trial by jury on all counts.

                                                    PLAINTIFF
                                                    VINCENT A. SHEPERIS

By:

                                                    /s/ Jeffrey S. Bagnell
                                                    Jeffrey S. Bagnell
                                                    Federal Bar No. CT18983

Jeffrey S. Bagnell, Esq., LLC
55 Greens Farms Road, #200-60
Westport, Connecticut 06880
(203) 984-8820
(203) 255-4454 (fax)
jeff@bagnell-law.com

Attorney for Plaintiff

11