UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT A. SHEPERIS,<br><br>        Plaintiff,<br><br>    v.<br><br>SIG SAUER, INC.,<br><br>        Defendant. | CIVIL ACTION NO.:<br><br>3:17-CV-01318-JCH |

**MEMORANDUM OF LAW IN SUPPORT OF SIG SAUER, INC.'S MOTION
FOR JUDGMENT ON THE PLEADINGS SEEKING DISMISSAL
OF PLAINTIFF'S AMENDED COMPLAINT**

In support of its motion pursuant to Federal Rule of Civil Procedure 12(c) for an Order dismissing Plaintiff's Amended Complaint, Defendant Sig Sauer, Inc. ("SIG Sauer") shows the Court as follows:

**INTRODUCTION**

In this case, plaintiff Vincent Sheperis claims that he was injured when he dropped his unsecured P320 pistol – with a round in the chamber – to the ground while transporting it, along with other equipment, to his vehicle. When the pistol hit the ground, it allegedly fired causing plaintiff to be struck in the left leg. As a result of this incident, plaintiff claims that he suffered physical injury and resulting mental and emotional trauma. Plaintiff claims that his P320 pistol is defectively designed or manufactured, and it should not have fired when he dropped it to the ground, notwithstanding clear warnings in the pistol's owner's manual stating that any loaded firearm may potentially fire if dropped, and that the firearm should not be loaded when being transported.

ORAL ARGUMENT REQUESTED

In Connecticut, the Connecticut Product Liability Act ("CPLA") is the *exclusive* remedy for all claims of harm caused by a product. Both the text of the statute and case law interpreting the statute make clear that the CPLA occupies the field with respect to personal injury claims arising from an allegedly defective product. Notwithstanding this direction from the Connecticut legislature and courts, plaintiff in this action is seeking to manufacture numerous non-CPLA claims, including a CUTPA claim, that are expressly barred. In fact, plaintiff deliberately eschewed the only potentially viable claim he has – under the CPLA – in an attempt to pursue various other claims, none of which are viable due to the exclusivity provision of the CPLA.

The allegations contained in plaintiff's Amended Complaint – the operative pleading in this action – make clear that all of plaintiff's damages are directly related to the harm caused by his allegedly defective firearm. Moreover, plaintiff's Amended Damages Analysis – a pleading filed in this case which details plaintiff's claimed damages – further confirms that plaintiff's damages relate entirely to the harm caused by his firearm. As a result, plaintiff is limited to seeking recovery under the CPLA to the exclusion of all other claims. Because none of plaintiff's pending claims are brought under the CPLA, SIG Sauer is entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

I. **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff alleges that on January 5, 2017, he was injured when his "Department-issued P320" (hereinafter the "Subject P320 Pistol") discharged after he dropped it to the ground while loading equipment into his vehicle.[1] At the time of the incident, the Subject P320 Pistol was allegedly in its holster and had a flashlight attached to it, which added weight to the falling

---

[1] Amended Complaint [D.E. 12] ("Am. Compl.") at 1. (Plaintiff's Amended Complaint contains an un-numbered introduction section entitled "Nature of Action." Citations contained herein that do not include the paragraph symbol ("¶") refer to the page number for this section of the Amended Complaint.)

ORAL ARGUMENT REQUESTED

firearm.[2]  Plaintiff alleges that when the Subject P320 Pistol impacted the ground, it discharged a round which struck plaintiff in the left leg, causing substantial physical harm, emotional distress, sleeplessness, and mental trauma.[3]

Nowhere in any of his various pleadings does plaintiff allege that he purchased the Subject P320 Pistol.  Rather, he alleges that the Subject P320 Pistol was issued to him by his employer, the Stamford Police Department.[4]  Thus, plaintiff does not allege that he suffered any damages apart from those related to the gunshot wound he sustained due to an allegedly defective firearm that "should never have discharged upon mere impact with the ground."[5]

On August 4, 2017, plaintiff filed his initial complaint in this action.  [D.E. 1.]  In his initial complaint, plaintiff brought claims for violation of the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m, *et seq.* (Count 1); violation of the Connecticut Unfair and Deceptive Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.* (Count 2); and negligent infliction of emotional distress (Count 3).  On August 31, 2017, before SIG Sauer filed a responsive pleading, plaintiff filed his Amended Complaint.  [D.E. 12.]  Plaintiff's Amended Complaint maintained the same causes of action as his initial complaint (Counts 1-3), but also added a cause of action for intentional infliction of emotional distress (Count 4).  In his Amended Complaint, plaintiff seeks damages in this action based on SIG Sauer's alleged "negligent manufacture and/or design of" the P320 model pistol.[6]

---

[2] Am. Compl. at ¶ 13.

[3] Am. Compl. at 1-2.

[4] Am. Compl. at ¶ 1.

[5] Am. Compl. at 2.

[6] Am. Compl. at 1.

ORAL ARGUMENT REQUESTED

On October 9, 2017, plaintiff filed a Notice of Voluntary Dismissal of Count One, which dismissed his claim for violation of the CPLA. [D.E. 17.] As a result, the only claims remaining against SIG Sauer are for violation of CUTPA (Count 2), negligent infliction of emotional distress (Count 3) and intentional infliction of emotional distress (Count 4). On October 18, 2017, SIG Sauer filed its Answer to plaintiff's Amended Complaint. [D.E. 19.] In its Answer, SIG Sauer avers that all of plaintiff's remaining claims are barred by the exclusivity provision of the CPLA.

On November 3, 2017, the parties held their required Rule 26(f) conference, and on November 6, 2017, the parties filed their Form 26(f) Report of Parties' Planning Meeting. [D.E. 23.] On November 16, 2017, the Court issued the Scheduling Order setting certain deadlines in this action. [D.E. 24.] Among the deadlines included in the Scheduling Order is a requirement that any motion by plaintiff to amend the complaint must be filed "no later than **NOVEMBER 28, 2017**." Plaintiff did not seek to amend his complaint to reinstate his CPLA claim prior to the November 28, 2017 deadline.

On December 29, 2017, plaintiff filed a motion for leave to file a Second Amended Complaint adding class allegations. [D.E. 29.] Notably, plaintiff's proposed Second Amended Complaint did not include a cause of action under the CPLA. SIG Sauer opposed plaintiff's motion on grounds that the motion was untimely and amendment would be futile because all of plaintiff's claims were barred by the exclusivity provision of the CPLA. [D.E. 34.] On February 2, 2018, the Court denied plaintiff's motion for leave to file a Second Amended Complaint without prejudice to refile. [D.E. 38.] Plaintiff renewed his motion for leave to file a Second Amended Complaint on April 20, 2018. [D.E. 43.]

On January 19, 2018, plaintiff served his Amended Damages Analysis as required by the Scheduling Order in this matter. [D.E. 34-1.] This pleading further confirms that all of plaintiff's

ORAL ARGUMENT REQUESTED

damages relate to the personal injury he sustained as a result of the Subject P320 Pistol. Specifically, plaintiff alleges the following categories of damages: (i) "physical injury, including but not limited to blood and tissue loss, damage to his patellar tendon and left knee, among other physical wounds," (ii) damages for "emotional distress and mental trauma" related to his physical injury, (iii) "economic damages related to lost wages, "due to being put out of work by the injury," and (iv) medical expenses "relating to the gunshot to his leg."[7]  In his Amended Damages Analysis, plaintiff includes a category of damages entitled "Other ascertainable loss as defined by CUTPA." Notwithstanding the label, it is clear that all of these damages relate to the physical injury he sustained due to the allegedly defective product:

> Plaintiff is experiencing ***ongoing physical pain when bending his knee***. It has at times interfered with his ability to engage in the rigorous exercise regimen related to remaining in top physical condition for his SRT position.  He was formerly an active participant and highly ranked competitor in the Reebok CrossFit Games, but ***due to his knee injury and complications from it***, he will no longer be able to compete or, possibly, participate, depending on how and when he fully recovers from his injury.[8]

For the reasons discussed below, plaintiff's Amended Complaint does not assert any viable causes of action.  Therefore, SIG Sauer is entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[9]

---

[7] D.E. 34-1 at 1-2.

[8] *Id.* at 3 (emphases added).

[9] As discussed in SIG Sauer's prior opposition to plaintiff's motion for leave, plaintiff's proposed Second Amended Complaint suffers from the same deficiencies as the current Amended Complaint.  Specifically, all of the claims contained in the proposed Amended Complaint are barred by the CPLA's exclusivity provision or otherwise lack merit.  [*See* D.E. 34.]

ORAL ARGUMENT REQUESTED

## II. LEGAL ARGUMENT

### A. Legal Standard

A court may enter a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) where the material facts are undisputed and a judgment on the merits is possible merely by considering the pleadings contents. *Romanella v. Hayward*, 933 F. Supp. 163, (D. Conn. 1996). The legal standards governing a court's consideration of a Rule 12(c) motion are the same as those standards governing the consideration of a Rule 12(b)(6) motion to dismiss. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, (2d Cir. 2001). The court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Id.*

In addition to the facts alleged in the complaint, a court may consider documents that are attached to, incorporated by reference in, or integral to the complaint, as well as matters that are subject to judicial notice, without converting the motion into one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Thus, the Court can consider plaintiff's Amended Damages Analysis [D.E. 34-1], which was filed with the Court and details plaintiff's claimed damages, without converting the instant motion to one for summary judgment.

To withstand a motion to dismiss, a complaint must contain sufficient factual matter, which if accepted as true, states a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). A party can move for judgment on the pleadings after the close of pleadings, but early enough not to delay trial. Fed. R. Civ. P. 12(c).

### B. All of Plaintiff's Claims Are Barred by the CPLA's Exclusivity Provision.

The Connecticut Product Liability Act (CPLA), Conn. Gen. Stat. § 52-572m, *et seq.,* is the exclusive remedy for recovery of damages caused by an allegedly defective product. The CPLA defines "product liability claim" to include "all claims or actions brought for personal injury, death

ORAL ARGUMENT REQUESTED

or property damage caused by the manufacture, construction design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. § 52-572(m)(b). The CPLA further provides that "[a] product liability claim … may be asserted *and shall be in lieu of all other claims against product sellers*, including actions of negligence, strict liability and warranty, *for harm caused by a product*." Conn. Gen. Stat. § 52-572n(a) (emphases added). The Connecticut Supreme Court has determined that "[t]he CPLA exclusivity provision makes the Act the exclusive means by which a party may secure a remedy for an injury caused by a defective product." *Hurley v. Heart Physicians, P.C.*, 278 Conn. 305, 324, 898 A.2d 777 (2006) (citing *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 818 A.2d 769 (2003)); *see also Mazurek v. Great American Insurance Co.*, 284 Conn. 16, 27, 930 A.2d 682 (2007) ("It is now beyond dispute that [the CPLA's exclusivity] provision provides the exclusive remedy for a claim falling within its scope, thereby denying a claimant the option of bringing common law causes of action for the same claim."); *Elliot v. Sears Roebuck and Co.*, 220 Conn. 500, 504-05, 642 A.2d 709 (1994) ("In adopting the [CPLA], the legislature intended to incorporate in a single cause of action an exclusive remedy for all claims falling within its scope.").

In *Gerrity v. R.J. Reynolds Tobacco Co.*, the Connecticut Supreme Court stated the test for exclusivity under the CPLA as follows:

> Therefore, the language of the exclusivity provision makes clear that the [CPLA] was intended to serve as the exclusive remedy for a party who seeks recompense for those injuries caused by a product defect. The language of the exclusivity provision, however, suggests that it was not designed to serve as a bar to additional claims, including one brought under CUTPA, either *for an injury not caused by the defective product*, **or** if the party is *not pursuing a claim for "personal injury, death or property damage."*[10]

---

[10] *Gerrity*, 263 Conn. at 128 (quoting Conn. Gen. Stat. § 52-572m (b)) (emphases added).

ORAL ARGUMENT REQUESTED

In *Gerrity*, the plaintiff brought suit as the executor of his mother's estate against two tobacco companies, R.J. Reynolds Tobacco Company and Lorillard Tobacco Company, seeking to recover damages relating to his mother's death from lung cancer.[11]  Plaintiff brought claims under the CPLA, alleging that the defendants' cigarettes were defective, and he also brought claims under CUTPA, alleging that defendants engaged in an industry-wide scheme to defraud consumers into believing there was "a bona fide scientific dispute regarding the addictive nature of cigarettes and the health hazards associated with them."[12]  The defendants sought dismissal of plaintiff's CUTPA claims on the grounds that they were barred by the exclusivity provision of the CPLA.

The Connecticut Supreme Court evaluated the interplay between the CPLA and CUTPA, holding that a "product liability claim," for which the CPLA is the exclusive remedy, "is one that seeks to recover damages for personal injuries … caused by the defective product."[13]  However, where a CUTPA claim seeks "to redress merely a *financial injury* ... of a kind that has never been regarded as part of the traditional tort remedy for harm caused by a defective product,"[14] and which "cannot be reasonably construed to be a claim for 'personal injury, death or property damage,'" such a claim can be brought in conjunction with (and is not barred by) the CPLA.[15]

The *Gerrity* Court allowed plaintiff to proceed with his CUTPA claim, which alleged that the decedent was forced to pay a higher price for the defendants' cigarettes than she would have paid absent the alleged wrongful conduct engaged in by the defendants.[16]  This financial injury was unrelated to the personal injury (lung cancer which caused her death) the decedent allegedly

---

[11] *Id.* at 122-23.

[12] *Id.* at 123-24.

[13] *Id.* at 128.

[14] *Id.* at 129-130.

[15] *Id.* at 130-31.

[16] *Id.* at 130.

ORAL ARGUMENT REQUESTED

sustained from the defective product (cigarettes).  Therefore, Gerrity's CUTPA claim was not barred by the CPLA's exclusivity provision.[17]

In this case, all of plaintiff's alleged damages stem from the physical injuries (and associated mental and emotional trauma) he claims to have sustained due to an alleged defect in the Subject P320 Pistol.  In his Amended Complaint, plaintiff clearly seeks damages arising out of the alleged "physical harm, emotional distress, sleeplessness, and mental trauma" he suffered when he was shot in the left leg.[18]  Nowhere in the Amended Complaint does plaintiff allege that he suffered any damages other than these physical and emotional damage related to the personal injury he sustained.  Rather, plaintiff claims that the Subject P320 Pistol should not have discharged when he dropped it while transporting it with a round in the chamber and that it discharged due to the "negligent manufacture and/or design" of the Subject P320 Model Pistol.  Plaintiff's Amended Damages Analysis [D.E. 34-1] further confirms that all of his claimed damages relate to harm caused by the product.

Notwithstanding plaintiff's attempts to characterize his alleged damages as falling under CUTPA, it is obvious they all relate to the personal injury allegedly caused by a defect in his Subject P320 Pistol.  More importantly for purposes of this motion, plaintiff does not allege anywhere in his Amended Complaint that he sustained *any damages other than those related to the physical injury* caused by the Subject P320 Pistol.  Under these circumstances, all of plaintiff's claims fall under the exclusive scope of the CPLA, and his improper attempt to manufacture a CUTPA cause of action should be rejected.  See *Gerrity*, 263 Conn. at 129 ("If, however, a party brings a CUTPA claim and seeks to use that statutory scheme when the claim is, in reality, one

---

[17] *Id.* at 131.

[18] Am. Compl. at 1-2.

ORAL ARGUMENT REQUESTED

falling within the scope of the product liability act, then the exclusivity provision applies."); *see also Densberger v. United Technologies Corp.*, 125 F. Supp. 2d 585, (D. Conn. 2000) (Hall, J.) (recognizing that the CPLA consolidates all claims that could be brought for harm caused by a product).

For the same reasons, plaintiff's claims for negligent infliction of emotional distress and intentional infliction of emotional distress are also barred by the exclusivity provision of the CPLA. As discussed above, it is "beyond dispute that [the CPLA's exclusivity] provision provides the exclusive remedy for a claim falling within its scope, thereby denying a claimant the option of bringing common law causes of action for the same claim." *Mazurek*, 284 Conn. at 27. Where the allegations contained within a claim are not based on allegations outside the scope of the CPLA, that claim must be stricken under the exclusivity provision of the CPLA. *See Zarikos v. Signature Bldg. Sys.* 2009 Conn. Super. LEXIS 868, *16 (Conn. Super. Ct. Mar. 24, 2009) (dismissing claim for negligent infliction of emotional distress as being barred under CPLA's exclusivity provision). Under these circumstances, plaintiff's claims for negligent infliction of emotional distress (Count III) and intentional infliction of emotional distress (Count IV) also fall under the purview of a CPLA claim and are, therefore, barred by the CPLA's exclusivity provision and should be dismissed.

### C. Plaintiff Lacks Standing to Maintain an Action Under CUTPA.

Even if plaintiff's CUTPA claim were not barred by the exclusivity provision of the CPLA – which it clearly is – plaintiff still could not maintain a CUTPA claim against SIG Sauer in this case. Plaintiff concedes that he did not purchase the Subject P320 Pistol, but rather, it was his "Department-issued P320."[19] CUTPA does not provide protection for persons who do not have

---

[19] *See* Am. Compl. at 1.

an appropriate commercial relationship with the defendant and, therefore, plaintiff does not have standing to maintain his CUTPA claim.

Although plaintiff does not have to allege a "consumer relationship" with SIG Sauer to assert a CUTPA claim,[20] the Connecticut Supreme Court has rejected the proposition that "a CUTPA plaintiff is not required to allege any business relationship with the defendant." *Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 157 (2005).[21] Connecticut courts have recognized three categories of persons who have suffered financial injury to have standing to sue under CUTPA: (1) consumers, (2) competitors, and (3) other business persons with a consumer or commercial nexus to the alleged wrongdoer. *Provost-Daar v. Merz N. Am., Inc.*, No. CV136037872S, 2014 Conn. LEXIS 411, *7-8 (Conn. Super. Ct. Feb. 24, 2014).

Plaintiff's Amended Complaint does not include any allegations that would place him within a category of persons authorized to bring a CUTPA claim. He did not purchase the Subject P320 Pistol, but rather, it was issued by his employer, the Stamford Police Department. Therefore, plaintiff is not a "consumer" with standing to bring a CUTPA claim. Additionally, plaintiff is obviously not a competitor of SIG Sauer, as he does not manufacture or sell firearms. And, plaintiff does not allege any other type of commercial relationship with SIG Sauer that would satisfy CUTPA's standing requirement. As a result, plaintiff does not fall within the class of persons authorized to bring a CUTPA claim. Therefore, even if plaintiff's CUTPA claim were not barred by the application of the CPLA – which it is – plaintiff could not meet the requirements for asserting a CUTPA claim in any event.

---

[20] *See Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 498 (1995).

[21] *See also Pintette v. McLaughlin,* 96 Conn. App. 769, 778 (2006) ("Although our Supreme Court repeatedly has stated that CUTPA does not impose a requirement of a consumer relationship, the court also has indicated that a plaintiff must have at least some business relationship with the defendant in order to state a cause of action under CUTPA.") (internal citations omitted).

ORAL ARGUMENT REQUESTED

**CONCLUSION**

For the reasons discussed above, all the claims included in plaintiff's Amended Complaint are barred by the exclusivity provision of the Connecticut Product Liability Act. None of plaintiff's current claims fall outside the purview of that exclusivity provision, and as a result, SIG Sauer is entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). SIG Sauer respectfully requests that the Court enter an order dismissing plaintiff's Amended Complaint and grant such other and further relief as is warranted.

Dated:  April 26, 2018
        Purchase, New York

Respectfully submitted,

By: _____
Robert L. Joyce, Esq.
LITTLETON PARK JOYCE UGHETTA
   & KELLY LLP
The Centre at Purchase
4 Manhattanville Road, Suite 202
Purchase, New York 10577
Tel: (914) 417-3400
robert.joyce@littletonpark.com

Anthony J. Natale, Esq.
NATALE & WOLINETZ
Federal Bar No. ct08451
116 Oak Street
Glastonbury, Connecticut 06033
Tel: (860) 430-1802
anatale@natalelawfirm.com

ORAL ARGUMENT REQUESTED