UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT A. SHEPERIS, | : | CIVIL ACTION NO.: |
|  | : | 3:17CV011318(JCH) |
| Plaintiff, | : | |
|  | : | |
|  | : | |
| CITY OF STAMFORD, | : | |
|  | : | |
| Intervening Plaintiff, | : | |
|  | : | |
| v. | : | |
|  | : | |
|  | : | |
| SIG SAUER, INC. | : | JURY TRIAL DEMANDED |
|  | : | |
|  | : | |
| Defendant. | : | JUNE 4, 2018 |

## SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(2), plaintiff Vincent Sheperis amends his Complaint against defendant Sig Sauer, Inc. on consent as follows.

## NATURE OF ACTION

This action seeks recovery of compensatory and punitive damages caused by defendant Sig Sauer, Inc.'s negligent manufacture, design and marketing of a semi-automatic firearm. Specifically, a semi-automatic pistol model known as the P320.

On January 5, 2017 the plaintiff, a member of the Stamford Police Department's Special Response Team (SRT), accidentally dropped his Department-issued P320 while loading SRT equipment into the rear of his vehicle. Upon impact with the ground, the pistol discharged, without the trigger being pulled,[1] shooting him in his left leg, causing substantial physical harm,

---

[1] In the weapons industry, this type of discharge is typically referred to as an inadvertent or unintended discharge, or "drop fire," in which the weapon fires without a trigger pull. *See, e.g., O'Neal v.*

emotional distress, sleeplessness, and mental trauma. At the time of its fall to the ground and discharge, Sheperis's pistol was fully-holstered. The trigger was therefore incapable of being touched or of any manual movement by Officer Sheperis.

The weapon should never have discharged upon mere impact with the ground, holstered or un-holstered. In its own "Safety Without Compromise" marketing materials for the P320, SIG SAUER states:

> "We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."

SIG further expressly represented in the marketing materials that the P320 was in fact drop safe: "[a]nd, while available as an option, you won't need a tabbed trigger safety for your gun to be drop safe."

Under these circumstances, SIG SAUER is liable for this incident under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m and 52-572n, which includes, on a unified basis, claims for strict liability, negligence, misrepresentation, punitive damages and breach of implied and express warranty.

## JURISDICTION

1.  Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff Vincent Sheperis is a citizen of the United States and the State of Connecticut. Defendant Sig Sauer, Inc. has a principal place of business in New Hampshire. The amount in controversy exceeds, exclusive of interest and costs, $75,000.

---

*Remington Arms Co., LLC*, 817 F.3d 1055, 1060 (8th Cir. 2015) (referring to "inadvertent discharge" of weapon "without the trigger being pulled").

## VENUE

2.  Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2).  A substantial part of the events or omissions giving rise to the plaintiff's claims occurred within this judicial district.

## PARTIES

3.  Vincent A. Sheperis is 34-year-old citizen of the United States who currently is domiciled in Connecticut.  He has been member of the Stamford, Connecticut police department since September 2006.  He has been a member of the Department's Special Response Team (SRT), known in other contexts as Special Weapons and Tactics, since 2011.

4.  Sig Sauer, Inc. designs and manufactures firearms for military, law enforcement, and commercial markets worldwide. It offers pistols, rifles, short barrel rifles, Sig Sauer Mastershop series, and firearms accessories; and apparel, CD/DVD training, and knives.

## ALLEGATIONS

5.  The discharge at issue occurred when Officer Sheperis accidentally dropped his fully-holstered P320 on the ground in the Department's Special Response Team bay parking area in Stamford, Connecticut on January 5, 2017.  The weapon fell to the ground from a distance of approximately three feet.  It was not thrown to the ground, "repeatedly or heavily dropped," or un-holstered when the incident occurred.

6.  Due to a defect in the trigger's weight, the weapon's impact with the ground resulted in an inertia-based unintended discharge.  The bullet struck Sheperis in his left leg.

7.  Any and all of the weapon's internal components failed to prevent it from discharging and shooting Officer Sheperis.

8. The bullet entered beneath his left knee, traversed the tissue and part of a tendon behind his patella, and lodged slightly to the left of his knee with the round protruding from his leg.

9. Fellow officers and EMS took Officer Sheperis to the emergency room at Stamford Hospital where he was operated on by two trauma surgeons.

10. While the full extent of the physical damage to his knee and leg is not yet known, the incident has resulted in substantial physical harm and related mental trauma to Officer Sheperis, who was completely out of work thereafter, then placed on light duty due to loss of function from the wound, then put out of work again after an additional surgery.

11. It has also thus far resulted in physical therapy, and additional surgery to repair the damage caused by the discharged round.

12. Sheperis's P320 pistol discharged on mere impact with the ground, without the trigger being pulled or touched, which defendant SIG represented was not possible in marketing materials for the P320. The bullet could easily have taken his life had it moved on a different trajectory.

13. Further, it discharged while it was securely holstered in a Model 6360 ALS/SLS Mid Ride, Level III Retention Duty Holster, which attaches to, and detaches from, a mid-thigh area mount worn by Special Response Team members.

14. Because it was holstered, the trigger was protected from any manual movement upon impact with the ground.

15. At no time before, during or after the incident did Officer Sheperis place his finger on the P320's trigger or touch the holstered firearm in any manner.

16. The P320 in question was delivered to SIG's headquarters for testing days after the January 5, 2017 shooting.

17. Upon information and belief, SIG did not drop test the weapon, but simply fired approximately 50 rounds through it and declared it to be fine. The Stamford Police Department provided SIG with the make and model of Sheperis's vehicle, height measurements from which the weapon fell, and the type of holster the weapon was in to assist SIG with drop testing of the weapon.

18. SIG ceased further communications with Officer Sheperis and the Stamford Police Department shortly after inspecting the weapon.

19. In the process of testing the weapon in January 2017, a SIG employee noted a mark or scratch on the rear of the slide.

20. In additional marketing material for the commercial version of the P320, under the heading "Striker Safety," defendant SIG SAUER states: The Striker Safety "[p]revents the striker from being released unless the trigger is pulled."

21. At the same time, SIG SAUER contradictorily stated in the manual for the P320, on page 25, that the weapon may fire if dropped without the trigger being pulled, if the chamber is not empty.

22. Upon information and belief, SIG SAUER inserted this warning into the P320 manual because its own internal testing, and/or other testing, revealed that it could fire if dropped at an angle at which the rear of the weapon's slide and frame struck the ground, causing the trigger to move backward and fire the gun due to inertial force.

23. It is standard operating procedure for all U.S. law enforcement agencies,

including the United States Secret Service, the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, Firearms and Explosives, as well as local and state police departments, to carry pistols with a chambered round. SIG was aware of this fact at the time it sold any and all P320 pistols to U.S.-based law enforcement agencies and departments, and has recently changed the original P320 manual to delete the warning regarding a chambered round.

24. Upon information and belief, a prototype P320 supplied to the United States Army drop fired in April 2016, and exhibited a host of other malfunctions, including ejection of live rounds, stoppages, and failure of the slide to lock back in place after the weapon fired. These malfunctions occurred while SIG was in the process of bidding on and competing for a $580,000,000 contract to replace the Army's existing firearm.

25. The Army conducted tests on the P320 from February 16 through June 22, 2016.

26. It awarded the contract to SIG in January 2017, the same month Sheperis was shot.

27. After the filing of this suit on August 4, 2017, SIG announced a "voluntary upgrade" of the weapon on August 8, 2017. At the time, the commercial version in commerce had already drop fired at least seven times within the United States, and the military version had also drop fired.

28. The upgrade program, which was presented to the public as purely optional, not urgent, and not mandatory, offered to make existing commercial versions of the P320 "better" by installing a much lighter trigger, and internal disconnect switch, and an improved sear to prevent accidental discharges.

29. On August 9, 2017, the police chief of Morrow, Georgia issued an emergency order removing the P320 from service.

30. On August 16, 2017, the Dallas Police Department issued a recall of the P320 due to drop safety concerns, prohibiting its use by officers until repaired. In an interdepartmental memo, it stated:

> Sig Sauer has identified that there is a defect in the P320 handgun that could cause the weapon system to go off when dropped. The Sig Sauer P320 was approved for primary duty, secondary primary duty, and back-up use. The Firearms Training Center is currently working with Sig Sauer to obtain a solution for the safety issue. Until Sig Sauer is able to find a solution to the safety issue, the Sig Sauer P320 is no longer approved by the Dallas Police Department for any use.

31. In October 2017, a P320 accidentally discharged in Georgia when an officer fell to the ground in pursuit of a suspect. His weapon was holstered and fired simply when he struck the ground.

32. On November 12, 2017, a P320 accidentally discharged in Tyler, Texas.

33. In January 2018, upon information and belief, a P320 accidentally discharged in Dallas County, Texas.

34. On February 7, 2018, a P320 accidentally discharged in Virginia, severing a deputy sheriff's femur.

35. Upon information and belief, employees at Sig Sauer's own training academy in New Hampshire have admitted to accidental discharges causing injury in both 2016 and 2017.

36. To date, SIG has never issued a mandatory recall of the P320 for repairs, though it has done so in the past for other of its products.

37. In an interview in 2013, SIG's Chief Financial Officer, Timothy Scullin, noted that Sig's revenue rose approximately 1,400 percent from 2012 to 2013 and stated that Sig Sauer's Growth has outpaced its industry's growth by "two or three times."

38. When asked what some of his biggest professional challenges he has faced in

his career, he stated:

> At SIG, to grow this fast, people get really challenged.  When you're growing 70 to 80 percent in a year, all the systems get stretched, and the people really get stretched. You have to be able to manage multiple tasks in a very fast environment, and in an environment that's highly regulated, so you can't mess up, otherwise you get shut down. It just creates a tremendous of stress on the people in the system.  But we've got people that have risen to the challenge.

39. Upon information and belief, there have been many prior incidents of unintended discharges involving Sig Sauer weapons that are dropped and fire without the trigger being pulled, or simply while being handled, or holstered.

40. For example, in 2014, a federal air marshal in New Jersey unintentionally shot himself while handling his SIG weapon.

41. In 2016, a tactical response training instructor near Sacramento dropped his SIG Sauer, firing a bullet into a student's truck.

42. On August 3, 2017, the Dallas Police Department issued a recall of the P320 due to drop safety concerns, prohibiting its use by officers until repaired.  In an interdepartmental memo, it stated:

> Sig Sauer has identified that there is a defect in the P320 handgun that could cause the weapon system to go off when dropped. The Sig Sauer P320 was approved for primary duty, secondary primary duty, and back-up use. The Firearms Training Center is currently working with Sig Sauer to obtain a solution for the safety issue. Until Sig Sauer is able to find a solution to the safety issue, the Sig Sauer P320 is no longer approved by the Dallas Police Department for any use.

43. Upon information and belief, employees at Sig Sauer's own training academy in New Hampshire have admitted to accidental discharges in both 2016 and 2017, including those involving the P320.

44. Days after the Dallas Police Department announced that SIG had informed them

of a defect with the P320 in July or August of 2017, SIG's CEO released a statement stating: "there have been zero (0) reported drop-related P320 incidents in the U.S. Commercial market."

45. This statement was misleading, in view of SIG's knowledge that Officer Sheperis had been shot by a drop fire some eight months earlier with a version of the weapon that was not the military version, but the commercial version of the weapon.

46. There is no difference between the version of the P320 used by law enforcement agencies and civilians in the U.S. Commercial market.  In other words, there is no "law enforcement" version of the P320.

47. SIG further stated in this release that "[a]s a result of input from law enforcement, government and military customers, SIG has developed a number of enhancements in function, reliability, and overall safety including drop performance."

48. The safety standards SIG claims the weapon passed do not have the force of law and are not federal regulations.  Moreover, they all require a pistol to be dropped on a one-inch thick rubber mat, and land on the same rubber mat, a testing criterion which is inadequate given that end users of the weapon do not walk around on rubber mats.  Only one of the tests (NIJ) requires that the weapon be dropped on its rear.

49. Upon information and belief, defendant recklessly failed to recall and fix this defect in the commercial model of this weapon when it first had knowledge of the defect in January 2017.  In all likelihood, it had knowledge of the drop defect as much as eight months earlier in April 2016, when the Army was testing the P320.

## **COUNT ONE**

## **VIOLATION OF CONNECTICUT PRODUCTS LIABILITY ACT (CPLA)**

## **Conn. Gen. Stat. §§ 52-572m and 52-572n**

50. Paragraphs one through 49 are incorporated by reference.

51. By its actions, in producing a weapon with a design and/or manufacturing defect, defendant Sig Sauer has violated the provisions of the CPLA.

52. The design and/or manufacturing defects in the P320 rendered it unreasonably dangerous.

53. Defendant is liable to Sheperis under the CPLA under theories of strict liability, negligence, misrepresentation, nondisclosure, and breach of implied and express warranty.

54. The defendant's violation of CPLA has been the proximate and foreseeable cause of physical harm and substantial compensatory and actual damages to Sheperis, entitling him to recover compensatory, economic, and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this case;

2. Empanel a jury;

3. Award actual and compensatory damages in the amount of $1 million or in any other amount determined by a jury for defendant's violation of the CPLA;

4. Award $2 million in punitive damages for defendant's violation of the CPLA;

5. Award plaintiff costs and reasonable attorneys' fees in bringing this action;

6. Retain jurisdiction over this case until defendant has complied with all orders of the Court;

7. Award such other relief as the Court deems appropriate.

The plaintiff demands a trial by jury on all counts.

          PLAINTIFF
          VINCENT A. SHEPERIS

By:

      /s/Jeffrey S. Bagnell
Jeffrey S. Bagnell
Federal Bar No. CT18983
Jeffrey S. Bagnell, Esq., LLC
55 Greens Farms Road, #200-60
Westport, Connecticut 06880
(203) 984-8820
(203) 255-4454 (fax)
jeff@bagnell-law.com

Attorney for Plaintiff

11

## CERTIFICATION

This is to certify that on this 4th day of June 2018 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties, as listed below, by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

      /s/Jeffrey S. Bagnell