UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT A. SHEPERIS, | : | CIVIL ACTION NO.: |
| | : | 3:17CV011318(JCH) |
| Plaintiff, | : | |
| | : | |
| v. | | |
| | : | |
| | : | |
| SIG SAUER, INC., | : | |
| | : | |
| | : | |
| Defendant. | : | JANUARY 19, 2023 |

**MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM FINAL ORDER**

**I.     Summary**

Pursuant to Fed. R. Civ. P. 60(b)(3), plaintiff Sheperis moves for relief from the final Order dismissing his case on the grounds of discovery fraud and fraud on the Court.

On January 5, 2017, Sheperis was shot when a holstered Sig Sauer P320 dropped to the ground and fired hitting him in his knee.  Over nearly a year of litigation, motion practice to compel discovery responses, and two settlement conferences with the Court, defendant Sig constantly represented to counsel and the Court that it had never heard of a P320 ever drop firing before Sheperis was shot in January 2017 ("SIG SAUER responds that it was not aware of any alleged drop-fire incidents involving a P320 model pistol prior to the date of the Subject Incident").  Ex. 1.

Recent discovery disclosures in a class action case show that this representation was entirely false.  Sig knew of prior drop failures of the P320 as early as December 2013 at its own facility in New Hampshire,[1] *four years before* Sheperis's P320 nearly took his life.  Yet it concealed this responsive

---

[1]     *Ortiz v. Sig Sauer, Inc.*, Civil No. 19-cv-1025-JL Opinion No. 2022 DNH 047, fn. 7:  "Manning Dep. (doc. no. 41-9) at 53:13-23; see also doc. no. 41-2 (tabulating the results of drop tests conducted on ten guns in December 2013 and **noting that the seventh gun fired on impact when dropped at an orientation described as "muzzle up horizonal bottom up"**); doc. no. 41-3 at 3 (April 2014 report from P320 drop testing, noting that "SAAMI, NATO, and additional 45° drop tests were conducted on two pistols (one with a full magazine well, one with an empty magazine well). The pistol with . . . the empty magazine well performed on orientation 12 when it fired on impact"). Ex. 2.

evidence during the entire case.  Had Sig disclosed this severely compromising information, Sheperis would not have been willing to settle for the sum offered by Sig.

**II.     Factual Background**

This is an action seeking damages and equitable relief for violation of the Connecticut Unfair Trade Practices Act and related common law torts under Connecticut law.  As set forth in the plaintiff's Amended Complaint (Docket No. 12), Sheperis, a member of the Stamford Police Department's Special Response Team (SRT), accidentally dropped his department issued P320 while loading SRT equipment into the rear of his vehicle.

Upon impact with the ground, the gun fired without the trigger being pulled, shooting him in his left leg, causing substantial physical harm, emotional distress, sleeplessness, and mental trauma.  At the time of its descent to the ground and discharge, Sheperis's pistol was fully holstered.  The trigger was therefore incapable of being touched or of any manual movement by Sheperis.

Plaintiff Sheperis brought causes of action seeking compensatory and punitive damages under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), for unfair and deceptive trade practices in their marketing of the weapon.  He also asserted claims under Connecticut common law for negligent and intentional infliction of emotional distress in view of Sig's misleading representations about the safety of the weapon.

A major issue in the case, if not the major issue, was whether Sig had knowledge before January 5, 2017 of design and manufacturing defects with the gun that could allow it to fire without the trigger being pulled.  This knowledge would have provided the foundation for a jury to award substantial punitive and compensatory damages given the inherent lethality of the product and Sig's recklessness in: (i) refusing to recall it or provide a safety warning and (ii) releasing it into commerce in the first place having that knowledge.  In his specific case, that issue was narrowed to whether Sig had knowledge of drop fires of the P320 before January 5, 2017.

On December 20, 2017, Sheperis served interrogatories and production requests on Sig. Interrogatory 10 stated:

> 10. Identify by number, date and location all accidental discharge incidents involving the P320 to date including but not limited to drop fires or inadvertent discharges.

Sig responded:

> Without waiving its objections, **SIG SAUER responds that it was not aware of any alleged drop-fire incidents involving a P320 model pistol prior to the date of the Subject Incident.** Subsequent to the date of the Subject Incident, SIG SAUER has been notified of the following alleged drop-fire incidents involving a P320 model pistol:
>
> 1. February 28, 2017 – University of Cincinnati Police Department;
>
> 2. June 14, 2017 – Wilsonville, OR;
>
> 3. June 20, 2017 – Howell Township, NJ Police Department;
>
> 4. July 28, 2017 – Tarrant County, TX; and
>
> 5. November 12, 2017 – Tyler, TX.
>
> SIG SAUER further objects to this interrogatory to the extent it seeks information about alleged drop-fire incidents that SIG SAUER was not made aware of prior to the date of the Subject Incident on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. SIG SAUER has provided information regarding alleged drop fire issues that occurred after the date of the Subject Incident, but in doing so, SIG SAUER explicitly reserves its right to object to the admissibility of this information. SIG SAUER further objects to this interrogatory to the extent it seeks information about discharges that are different from the Subject Incident, where plaintiff alleges that the Subject P320 Pistol discharged upon impacting the ground when plaintiff dropped it, on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.

Ex. 3.

This answer was false, as the summary judgment decision and discovery documents in *Ortiz v. Sig Sauer, Inc., supra*, unequivocally show. Sig was in fact fully aware of drop fires pre-dating the Sheperis shooting by many years. At least two occurred at their own headquarters facility in New Hampshire in December 2013 and January 2014:

> While testing, Sig Sauer's technicians "encountered primer ignition" after dropping the P320 pistol on "a couple" of occasions, including in December 2013 and April 2014, "and the

engineers were immediately notified."[7] Sig Sauer determined that the pistol satisfied the drop safety standards propounded by the NIJ and ANSI/SAAMI.[8, 9] Sales of the P320 pistol began in January 2014, and by August 2017, consumers in the U.S. commercial market had purchased 314,059 P320 pistols.[10]

> fn. 7: "Manning Dep. (doc. no. 41-9) at 53:13-23; see also doc. no. 41-2 (tabulating the results of drop tests conducted on ten guns in December 2013 and **noting that the seventh gun fired on impact when dropped at an orientation described as "muzzle up horizonal bottom up");** doc. no. 41-3 at 3 (April 2014 report from P320 drop testing, noting that "SAAMI, NATO, and additional 45° drop tests were conducted on two pistols (one with a full magazine well, one with an empty magazine well). The pistol with . . . the empty magazine well performed on orientation 12 when it fired on impact").

Ex. 2, p. 5.

Lead counsel for Sig in both the *Ortiz* and *Sheperis* cases was the same attorney who represented to this Court that Sig had "no knowledge" of any drop fires before January 5, 2017, Robert Joyce. This answer was also represented as accurate to the Court during the parties' argument on Sheperis' Motion to Compel. Docket No. 59. This no doubt explains why the *Ortiz* summary judgment objection, in which Sig's prior knowledge of drop fires in December 2013 and January 2014 is exhaustively detailed, is so heavily redacted:

I.  THE DEFECTIVE P320 PISTOL

   A.  Production And Testing History

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████ Defendant SIG Sauer Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment (Dkt. No. 50-1) ("MSJ") at 4. But SIG was aware of the Defect even before

then. ▮

▮ Ex. 73[1]

(Manning Dep.) at 28:3-18, 30:10-16 (▮). ▮

▮

▮ Ex. 2. ▮

▮



Ex. 2. Ex. 73 (Manning Dep.) at 50:24-51:12. Despite ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, SIG began to sell the P320 commercially just three months later claiming it was "drop safe." Ex. 74 (SIG-ORTIZ001336).



Exs. 3-4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 5; Ex. 73 (Manning Dep.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮). As a result of SIG's internal drop testing of the P320, it knew prior to <u>any</u> sales that the pistol had a drop fire defect:



Ex. 4.

In short, truthful discovery answers were provided to class counsel in the *Ortiz* case, but false answers were provided to Sheperis, his counsel and the Court. At no time did counsel for Sig ever attempt to inform counsel for Sheperis that its discovery responses in the case were false. Counsel for Sheperis remained unaware of the duplicity until the *Ortiz* decision was recently forwarded to him last month.

### III.     Governing Law

Rule 60(b)(3) permits relief from a final judgment on the basis of "fraud ..., misrepresentation, or misconduct by an opposing party." Fed.R.Civ.P. 60(b)(3). However, such relief "cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits" of the underlying decision. *Fleming v. N.Y. Univ.,* 865 F.2d 478, 484 (2d Cir.1989); *see also Liu v. Kinokuniya Co., Ltd.,* 161 Fed. App'x 119, 119 (2d Cir.2005) ("A party seeking vacatur under Rule 60(b)(3) must establish the opposing party's fraud by clear and convincing evidence."). To prevail on a Rule 60(b)(3) motion, the movant "must show that the conduct complained of prevented [her] from fully and fairly presenting [her] case." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 176 (2d Cir.2004) (internal quotation marks and citation omitted).

Rule 60 "does not limit a court's power to ... set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Even where there are no independent jurisdictional grounds for a plaintiff's claim of fraud on the court, "the district court that entered the original judgment has inherent 'ancillary' equitable jurisdiction to entertain the suit for relief from the judgment." *Cresswell v. Sullivan & Cromwell*, 922 F.2d at 70. "[W]here the independent action to set aside a judgment on the basis of fraud is brought before

the court that rendered the original judgment, ancillary jurisdiction over the independent action exists despite the absence of the diversity of citizenship or federal question that formed the basis of the court's jurisdiction over the original action." *Weldon v. United States*, 845 F.Supp. 72, 76-77 (N.D.N.Y. 1994) (citing *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 800 n.1 (2d Cir. 1960)), aff'd, 70 F.3d 1 (2d Cir. 1995).

For a Rule 60(b)(6) motion to succeed the movant must present "highly convincing" evidence in support of the motion, show good cause for the failure to act sooner, and show that no undue hardship will be imposed on the non-moving party as a result. *Kotlicky v. U.S. Fidelity Guaranty* Co., 817 F. 2d 6, 9 (2d Cir. 1987). Under Rule 60(b)(6), a movant is required "to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

The Supreme Court has noted the existence of decisions applying a discovery rule in "fraud cases" that is distinct from the traditional equitable tolling doctrine. *Merck & Co. v. Reynolds*, 559 U.S. 633, 644, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010); *Gabelli v. SEC*, 568 U.S. 442, 450, 133 S.Ct. 1216, 185 L.Ed.2d 297 (2013) (referring to the "fraud discovery rule"). And it has repeatedly characterized these decisions as applying an equity-based doctrine. *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 582 U.S. ——, —— – ——, 137 S.Ct. 2042, 2051–2053, 198 L.Ed.2d 584 (2017); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10–11, 134 S.Ct. 1224, 188 L.Ed.2d 200 (2014); *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 226–227, 132 S.Ct. 1414, 182 L.Ed.2d 446 (2012); *Young v. United States*, 535 U.S. 43, 49–50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002). *Rotkiske v. Klemm*, 205 L. Ed. 2d 291, 140 S. Ct. 355, 361 (2019)

**IV. Discussion**

A. *Sig's discovery misconduct justifies relief from the Order dismissing the case.*

The evidence of Sig's discovery misconduct in this case is clear and convincing and it was not discovered until this year, after the one-year period had elapsed. There was no other way for counsel for Sheperis to have obtained the information and there was no reason to suspect that it was concealed from him in response to his duly served discovery requests during the pendency of the case. The parties argued the specific issue of compliance with Interrogatory 10 in court and Sig did not modify or ever revise its response that it allegedly had no knowledge of drop fires prior to January 5, 2017, despite knowing full well that it was false. Sheperis contends that this was not only a fraud on Sheperis and his counsel, but the honorable Court as well. The Second Amendment gives a gunmaker no special immunity from compliance with discovery obligations or respect for the authority of the Court.

B. *Sig will suffer no undue hardship given its intentional concealment of evidence prevented counsel for Sheperis from fully and fairly presenting his case.*

Sig cannot possibly claim that reopening the case in view of the concealed evidence will somehow unduly "prejudice" it. Sheperis was the party prejudiced when Sig concealed highly relevant and even dispositive evidence in his favor. If a jury were presented with the evidence that Sig knew of drop fires with the P320 in December 2013 and January 2014 - - *and still put it in commerce* and never issued a safety warning, it is not difficult to envision a substantial punitive damages award in favor of Officer Sheperis. It was only pure luck that the bullet in his case did not take his life. He is a law enforcement officer charged with protecting the public and already puts his life at risk every day as an SRT officer. For Sig to supply him with a lethally defective weapon and conceal that fact in court should lead the Court to impose an appropriate sanction on Sig.

## V.  Conclusion

For the reasons stated, plaintiff requests that his Motion be granted.

Respectfully submitted,

VINCENT SHEPERIS

By:  ___/s/___*Jeffrey S. Bagnell*_____
Jeffrey S. Bagnell
Federal Bar No. CT18983
55 Post Road West, Suite 200
Westport, Connecticut 06880
(203) 984-8820
jeff@bagnell-law.com

**CERTIFICATION**

      I hereby certify that on January 19, 2023, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

                                                            /s/ *Jeffrey S. Bagnell*_____
                                                               Jeffrey S. Bagnell