UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT A. SHEPERIS, | CIVIL ACTION NO.: |
| Plaintiff, | 3:17CV01318(JCH) |
| CITY OF STAMFORD, | |
| Intervening Plaintiff, | |
| v. | |
| SIG SAUER, INC., | |
| Defendant. | |

### DEFENDANT SIG SAUER, INC.'S OPPOSITION TO MOTION FOR RELIEF FROM FINAL ORDER

Defendant Sig Sauer, Inc. ("Sig Sauer"), through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Plaintiff Vincent Sheperis's Motion for Relief from Final Order [Dkt. 73].

### INTRODUCTION

Plaintiff's motion seeks to recast the discovery decisions by his counsel into claimed mistruths by Sig Sauer in order to renege on a settlement agreement reached under the auspices of this court's mediation program five years ago. However, plaintiff's claims of alleged "fraud, misrepresentation, or misconduct by an opposing party" under Rule 60(b) are subject to an absolute, one-year limitations period from the time a final order is entered—here, June 26, 2018— and are, therefore, time barred under black letter law.

1

In addition, even if plaintiff's claims were timely, there is no basis—let alone the "extraordinary circumstances" required to vacate the final order in this matter under Rule 60(b)—to overturn the parties' settlement agreement.

Plaintiff's attempt to rely as a fallback on the savings clause of Rule 60(b)(6) by alleging "fraud upon the court" is equally unavailing, as that provision may not be used in this manner to circumvent Rule 60(b)(3)'s time restriction. Finally, even if plaintiff's Rule 60(b)(6) claim were timely, "fraud upon the court" is limited to egregious conduct which seriously affects the integrity of the normal process of adjudication as opposed to fraud which involves injury to a single plaintiff. Under no circumstances can the facts of this case support such a showing.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Accident

Plaintiff Vincent Sheperis claims he was injured on January 5, 2017, when he dropped his unsecured P320 pistol – holstered and with a round in the chamber – to the ground while transporting it, along with other equipment, to his personal vehicle. When the subject pistol hit the ground, it allegedly fired, causing plaintiff to be struck in the left leg. On August 4, 2017, plaintiff filed a lawsuit against Sig Sauer, arguing that a properly designed and manufactured pistol should not fire when it is dropped to the ground.

### B. The P320 Pistol

The P320 pistol was made available for sale in the Spring of 2014. Prior to releasing the P320 pistol to the public, the P320 pistol was tested to, and confirmed to comply with, various firearms industry standards, including standards promulgated by the Sporting Arms and Ammunition Manufacturers' Institute (SAAMI) and the National Institute of Justice (NIJ), among others. Among the types of tests conducted was drop testing to determine whether a pistol will

discharge when dropped under specific conditions. Prior to being sold, the production model of the P320 passed the drop fire testing conducted pursuant to the SAAMI and NIJ standards.

Because it passed the firearms industry standards for drop safety in the United States – specifically the SAAMI and NIJ standards – the P320 pistol was deemed to be "drop safe." However, given the limitations of test standards – pistols required to be dropped from specific heights and at specific angles – versus the unlimited circumstances under which a pistol may be dropped in the field – from varying heights and in varying conditions, such as in a holster – Sig Sauer expressly warned users that the P320 pistol, like any other firearm, may fire if dropped. (*See* P320 Owner's Manual, attached hereto as **Exhibit 5**, at SIG000025.)



Thus, Sig Sauer unambiguously warned users that the P320 pistol – like any pistol – may fire if dropped and warned users they must engage in safe gun handling practices to avoid dropping a loaded pistol.

During its pre-production testing of the P320, there were instances where a P320 pistol experienced a drop fire when tested outside recognized standards and/or in non-standard configurations (*i.e.,* not the same version as was ultimately produced and sold to the marketplace). Such testing is a typical part of the research and development process and is common among all products.

Plaintiff has cited to no evidence – nor can he – to support his current claim that Sig Sauer provided any information in discovery that was not true and accurate based on its knowledge at the time. As Sig Sauer has maintained, both in discovery in this action and in the separate *Ortiz* matter relied upon to support plaintiff's claims, at no time prior to plaintiff's accident – or even up until today – did the P320 pistol fail to satisfy any of the recognized standards to which it was tested. *See* Deposition of Sean Toner from *Ortiz v. Sig Sauer* ("Toner Depo."), attached as **Exhibit 4**, at 38:9-23, 129:11-15, 130:7-13.

Plaintiff's January 5, 2017 incident was the first time Sig Sauer was informed that a P320 user had dropped his or her pistol and had it discharg causing injury. Plaintiff's incident occurred outside the parameters of the SAAMI and NIJ test standards – the pistol was holstered, adding extra weight to the pistol as it dropped, and fell from an unknown height onto concrete. Shortly thereafter, in February 2017, the U.S. Army – which had selected a variant of the P320 pistol as its new sidearm – informed Sig Sauer that it had experienced a drop fire during its testing of the P320 variant. (Toner Depo. (Ex. 4) at 9:23-10:7.) This drop fire resulted from testing that was conducted outside the parameters of the Army's testing standard, and it was also outside the parameters of the SAAMI and NIJ test standards. (*Id.* at 104:23-105:15.) After being made aware of the potential drop fire vulnerability of the P320 as a result of these two incidents, SIG Sauer sought to determine the cause of the issue and a potential solution. (*Id.* at 32:13-22.)

Through its testing beyond the published U.S. safety standards – specifically the SAAMI and NIJ standards – SIG Sauer determined that when the P320 pistol impacted the ground at a specific angle, the trigger may be pulled by inertial forces due to the mass of the internal components. (Toner Depo. (Ex. 4), at 68:15-23.) In August 2017, Sig Sauer implemented a

4

modified design for the P320 pistol which reduced the mass of certain internal components to enhance the drop safety of the P320 pistol. (*Id.* at 61:18-63:1, 85:6-22, 88:9-14.)

### C. Discovery In This Case

During discovery, plaintiff served written interrogatories on Sig Sauer, but he did not take any depositions. One of the interrogatories – which forms the sole basis for plaintiff's motion – sought information about "accidental discharge incidents" involving the P320 pistol.[1] Sig Sauer responded that "it was not aware of any alleged drop fire incidents involving a P320 model pistol prior to the date of the Subject Incident." *See* Ex. 1, at Response No. 10. Sig Sauer then provided information about alleged drop fire incidents that occurred *after* plaintiff's incident while maintaining an objection as to the admissibility of such information. Sig Sauer also objected to providing information regarding accidental discharge incidents that occurred under circumstances other than an alleged drop fire, as such information was not relevant to plaintiff's claims. *See id.*

This interrogatory response was subject to a motion to compel, which was argued to the Court on May 30, 2018. Following oral argument, Sig Sauer was ordered to amend its responses to identify "incidents involving P320 dropped fires and other inadvertent discharges not involving insertion of objects/fingers in trigger." *See* 5/30/2018 Minute Order, Dkt. 59. Following the Court's ruling, Sig Sauer amended its interrogatory response to identify two additional alleged accidental discharge incidents that did not result from the P320 pistol allegedly being dropped. *See* Sig Sauer's Amended Responses to Plaintiff's Interrogatories, attached as **Exhibit 2**, at Response No. 10.

---

[1] Plaintiff does not attach Sig Sauer's interrogatory responses to his motion; rather, he attaches Sig Sauer's responses to plaintiff's requests for production. A copy of Sig Sauer's interrogatory responses is attached hereto as **Exhibit 1**.

5

Plaintiff now seeks a *post hoc* change in the meaning of "accidental discharge incidents" to include pre-production testing of the P320. However, the record is clear that neither party considered plaintiff's discovery demands about "accidental discharge incidents" to include pre-production testing. This is not surprising as it requires a stretch of the English language to equate "pre-production testing" to "accidental discharge incidents." Beyond the language that plaintiff's counsel used to frame his request, Plaintiff's counsel made abundantly clear at the time that the information he was seeking in Interrogatory No. 10 referred to post-production accidental discharge incidents. On April 4, 2018, plaintiff's counsel Jeff Bagnell sent a meet and confer email to Sig Sauer's counsel requesting that certain interrogatory responses, including response to Interrogatory No. 10, be amended. In explaining his justification for seeking information about incidents beyond drop fire incidents, Mr. Bagnell stated "Data regarding how many times [a P320 experienced an accidental discharge], whether by an accidental drop or otherwise, ***since the P320 was introduced into commerce to the present day***, is obviously information relevant to [plaintiff's] claims." *See* 4/4/18 Bagnell Email, attached as **Exhibit 3**. Nowhere does Mr. Bagnell seek information about pre-production testing in connection with his request for information about accidental discharge incidents.

### D.  Settlement of Plaintiff's Claims

In June 2018, in connection with a settlement conference conducted under the auspices of this Court's mediation program, the parties agreed to resolve plaintiff's claims. In connection with that resolution, plaintiff signed a Confidential Settlement Agreement and Release of Claims in which he agreed to release any and all claims against Sig Sauer, including any claims that were

known or unknown, related to the subject P320 pistol or plaintiff's incident.[2] Plaintiff was represented by the same counsel who filed the instant motion. To the extent Plaintiff or his counsel believed additional discovery was necessary to support his position, he should have sought such discovery prior to agreeing to resolve his claims. Plaintiff's claims were resolved pursuant to the terms of the Agreement, **and the case was dismissed with prejudice on June 26, 2018**. Dkt. 70.

## ARGUMENT

### A. Plaintiff's Claim for Relief Under Rule 60(b)(3) is Time Barred.

Rule 60(b) provides six grounds for relief from a final judgment or order. Fed. R. Civ. P. 60(b). Rule 60(c) further provides that "[a] motion under Rule 60(b) must be made…for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1). "This limitations period is 'absolute.'" *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (citing 12 James Wm. Moore, Moore's Federal Practice § 60.65[2][a], at 60–200 (3d ed.1997)).

Here, plaintiff seeks relief under Rule 60(b)(3) for alleged "fraud…, misrepresentation, or misconduct by an opposing party." *See* Plaintiff's Motion at 1, 7 [Dkt. 73-1]. However, the Court entered its Order of Dismissal in this case over four years ago, on June 26, 2018. Dkt. 70. Plaintiff's motion was filed years after the absolute, one-year time limit prescribed by Rule 60(c) elapsed. Plaintiff's motion is, therefore, untimely and should be denied on this basis alone. *See Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118, 120 (2d Cir. 2013) (finding Rule 60(b) motion time barred where motion was filed on last day of one-year limitations period but accompanying memorandum of law was not filed until four days after the deadline had expired); *Buffalo Tchrs. Fed'n v. Tobe*,

---

[2] The parties' settlement agreement is subject to strict confidentiality. To the extent the Court wishes to review a copy of the agreement, Sig Sauer will provide it to the Court for *in camera* review.

7

514 F. App'x 57, 58 (2d Cir. 2013) ("The Unions brought their Rule 60 motion many years after the judgment they seek to reopen. Accordingly, Rule 60(b)(3) is not available to them.").

### B. Rule 60(b)(6) is Not Applicable and Any Claim Under that Provision is Also Time Barred.

Likely recognizing that his claim under Rule 60(b)(3) is time-barred under black letter law, plaintiff also appears to invoke the savings clause of Rule 60(b)(6), which contains no similar time restriction, but under which a motion must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Specifically, plaintiff asserts in conclusory fashion that Sig Sauer's alleged concealment of information in discovery, which he argues is "fraud, misrepresentation, or misconduct by an opposing party" under Rule 60(b)(3), also constitutes "fraud on the Court." *See* Plaintiff's Motion at 1, 9 [Dkt. 73-1]. The law is clear: where a Rule 60(b) motion is premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5), relief is not available under the savings clause of Rule 60(b)(6). *Warren*, 219 F.3d at 114; *Schiel v. Stop & Shop Co.*, No. CIV. 3:96CV1742 WWE, 2006 WL 2792885, at *5 (D. Conn. Sept. 6, 2006) ("Rule 60(b)(6) is reserved for extraordinary circumstances that exist outside of provisions (b)(1) through (b)(5)."). "In particular, Rule 60(b)(6) may not be used to circumvent the 1–year limitations period that governs [Rule 60(b)(1)-(3)]." *Warren*, 219 F.3d at 114. *See also Colucci*, 531 F. App'x at 120 ("Rule 60(b)(6) is a broadly drafted 'umbrella provision,' which must be read in conjunction with the other sections of that Rule, and is applicable only where the more specific provisions do not apply"). Because plaintiff's motion is "more properly construed" as a Rule 60(b)(3) claim of fraud, misrepresentation, or misconduct by an opposing party, and plaintiff's secondary reliance on Rule 60(b)(6) is clearly no more than an effort to circumvent the 1-year limitations period, that claim "is also barred under the absolute one-year deadline." *Id.*

### C. Plaintiff Plainly Does Not Show Extraordinary Circumstances that Would Warrant Reopening this Case.

Even if plaintiff's claims were timely—which they decidedly are not—plaintiff fails to establish his entitlement to relief under either Rule 60(b)(3) or 60(b)(6). "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Under Fed. R. Civ. P. 60(b)(3), relief on the basis of alleged "fraud..., misrepresentation, or misconduct by an opposing party" "cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits of the underlying decision." *In re Bolin & Co., LLC*, No. 3:08CV1793 SRU, 2012 WL 4370530, at *4 (D. Conn. Sept. 24, 2012) (internal quotation marks and citations omitted). Further, relief under Rule 60(b)(3) cannot be granted absent a showing that the that "the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004); *see Bank of New York Mellon v. Worth*, No. 3:13-CV-1489 (MPS), 2016 WL 1048742, at *4 (D. Conn. Mar. 14, 2016).

The bar for establishing a claim for "fraud on the court" under Rule 60(b)(6)'s savings clause is even higher. *See Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). "Indeed, 'fraud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication," as opposed to fraud which only involves injury to a single litigant. *Id.* The Second Circuit "has defined 'extraordinary circumstances' quite narrowly in an effort to preserve the finality of judgments," and has held, for instance, that neither perjury nor nondisclosure are sufficiently egregious to meet the threshold for "fraud upon the court." *Schiel*, 2006 WL 2792885, at *5. *See also Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir.1987)*; Gleason*, 860 F.2d at 560.

9

Here, plaintiff has presented no evidence, let alone clear and convincing evidence, that Sig Sauer engaged in any misconduct, misrepresentation, fraud, or concealment. As discussed above, plaintiff cannot even show that Sig Sauer's response to the interrogatory at issue—which undeniably called only for information about Sig Sauer's knowledge of alleged drop fire *accidental discharge incidents*—is in any way inaccurate or incomplete. That Plaintiff may now regret certain decisions he made as to how or what information to pursue in discovery of this case does not entitle him to relitigate the matter. Moreover, plaintiff makes no effort to show how the pre-production testing he claims he was unaware of prevented him from fully and fairly presenting his case.

Plaintiff's further suggestion that Sig Sauer's conduct rose to the level of "fraud upon the court" is even more astounding.[3] Indeed, it is clear from the record that it is plaintiff, not Sig Sauer, who, through this motion, shows disregard for the integrity of the Court. Plaintiff's flagrant attempt to renege on a settlement agreement for a second bite at the apple under the auspices of a rule specifically designed to be narrowly construed to preserve the finality of judgments should not be condoned. *See Schiel*, 2006 WL 2792885, at *2. Simply put, plaintiff has failed to put forth any evidence even approaching the "extraordinary circumstances" required to disrupt a final judgment or order under Rule 60(b).

---

[3] To justify his delay in bringing this motion and salvage an "independent action" for fraud on the court, plaintiff cites a string of Supreme Court cases which purportedly support the existence of "a discovery rule in fraud cases." Plaintiff's Motion at 8 [Dkt. 73-1]. The cases plaintiff cites are inapposite, as not a single one even addresses the type of relief sought here—relief from a final judgment or order under Federal Rule of Civil Procedure 60(b).

## **CONCLUSION**

For the reasons discussed above, Sig Sauer respectfully requests that the Court enter an order denying plaintiff's Motion for Relief from Final Order in its entirety and grant such other and further relief as is warranted.

Dated: February 9, 2023
       Purchase, New York               Respectfully submitted,

                                       By:  /s/ Robert L. Joyce
                                               Robert L. Joyce, Esq.
                                               LITTLETON PARK JOYCE UGHETTA & KELLY LLP
                                               The Centre at Purchase
                                               4 Manhattanville Road, Suite 202
                                               Purchase, New York 10577
                                               Tel: (914) 417-3400
                                               robert.joyce@littletonpark.com

                                               *Counsel for Sig Sauer, Inc.*