UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT A. SHEPERIS, | : | CIVIL ACTION NO.: |
| | : | 3:17CV011318(JCH) |
| Plaintiff, | : | |
| | : | |
| CITY OF STAMFORD, | : | |
| | : | |
| Intervening Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SIG SAUER, INC. | : | |
| | : | |
| | : | |
| Defendant. | : | DECEMBER 20, 2017 |

## <u>PLAINTIFF VINCENT A. SHEPERIS'S FIRST SET OF INTERROGATORIES TO DEFENDANT</u>

Pursuant to Federal Rule of Civil Procedure 33, Defendant, SIG SAUER, INC. ("SIG SAUER") responds, upon information and belief, to Plaintiff's First Set of Interrogatories, as follows:

## <u>PRELIMINARY STATEMENT</u>

SIG SAUER has not fully completed its investigation, discovery, analysis, legal research and preparation for trial. The responses contained herein are based only upon the information and documentation that is presently available to and known to SIG SAUER. It is possible that further investigation, discovery, analysis, legal research and/or preparation may result in the ascertainment of additional information or documentation, or provide

additional meaning to known information or documentation, or establish additional or new factual conclusions and legal contentions, all of which may result in the modification of these responses. Accordingly, SIG SAUER reserves the right to modify its responses herein based upon subsequently ascertained or developed information, documentation, facts and contentions.

SIG SAUER generally objects to plaintiff's requests for production concerning any firearm other than the SIG SAUER P320 model pistol, which is the model pistol at issue in this lawsuit.

Subject to the objections asserted herein, SIG SAUER has provided responses to plaintiff's requests for production in a good faith effort to reasonably respond based upon presently available information and documentation. These responses should not be construed to prejudice SIG SAUER's right to conduct further investigation, discovery, analysis, legal research and/or preparation, or to limit this defendant's right to utilize any additional evidence that may be developed.

Except for explicit facts stated herein, no incidental and/or implied admissions are intended or made by SIG SAUER in any of these responses. SIG SAUER's responses should not be construed as an admission that this defendant accepts or admits any facts set forth or implied in plaintiff's requests. SIG SAUER's response to any portion of plaintiff's requests should not be construed as a waiver of part or all of this defendant's objections thereto.

All objections made herein are made on the advice of counsel in order to protect responding party from unwarranted invasion of its privacy, records, and files.

**DEFINITIONS**

1.     "Subject Incident" refers to the January 5, 2017 incident during which plaintiff was allegedly injured when he dropped his P320 model pistol and it allegedly discharged upon impacting the ground as described in plaintiff's First Amended Complaint.

2.     "Subject P320 Pistol" refers to the P320 model pistol that allegedly discharged upon impacting the ground after plaintiff dropped it as alleged in plaintiff's First Amended Complaint.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

1.     Do you contend that the P320 is drop safe if accidentally dropped from three feet or lower.   For purposes of responding to this interrogatory, please refrain from citing any hypothetical instances of the weapon being thrown to the ground on purpose, "repeatedly or heavily" dropped, or vibrated.

**RESPONSE: Subject to and without waiving its objections, SIG SAUER responds that the P320 model pistol was tested to and met all U.S. safety standards for abusive handling, including, but not limited to, the National Institute of Justice's Standard 0112.03, Autoloading Pistols for Police Officers ("NIJ Standard 0112.03"); ANSI/SAAMI Z299.5-2016, American National Standard Voluntary Industry Performance Standards**

Criteria for Evaluation of New Firearms Designs Under Conditions of Abusive Mishandling for the Use of Commercial Manufacturers ("ANSI/SAAMI Z299.5-2016"); and California's Title 11, Division 5, Chapter 5, Department of Justice Regulations for Laboratory Certification and Handgun Testing ("CA DOD Handgun Standard"). Each of these standards includes a drop safety requirement and test standard that firearms must pass to comply with the standard. (*See* NIJ Standard 0112.03, at § 4.7 and § 5.7; ANSI/SAAMI Z299.5-2016, at § 5; CA DOD Handgun Standard, at § 4060(f).) These standards were developed to specify "performance and other requirements equipment should meet to satisfy the needs of criminal justice agencies for high quality service." (*see* NIJ Standard 0112.03 at iii) and to specify "[t]est parameters [which] simulate conditions where abusive mishandling could possibly result in accidental discharge" (*see* ANSI/SAAMI Z299.5-2016, at Foreword). SIG SAUER refers plaintiff to the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Handgun Standard, copies of which are being produced in connection with these responses. In addition to these standards, Massachusetts and New York require guns sold or transferred into the state to meet certain performance requirements, including specified drop test requirements (*see* MA 940 CMR 16.00; N.Y. Comp. Codes R. & Regs. tit. 9, § 482.6). The P320 model pistol was tested to and met these standards as well.

SIG SAUER further responds that as with any mechanical device, exposure to acute conditions such as shock, vibration, heavy or repeated drops, may have a negative effect on a firearm's mechanical safeties and should be avoided as part of safe firearm handling practices. Therefore, SIG SAUER warns all users that: "All SIG SAUER pistols incorporate effective mechanical safeties to ensure they only fire when the trigger is pressed. However, precautions should always be taken to avoid dropping a loaded firearm. Although extremely unlikely, it is still possible for any loaded firearm to discharge when dropped." *See* P320 Owner's Manual at p. 25.

SIG SAUER objects to this interrogatory as vague and ambiguous because the term "drop safe" is undefined. For purposes of this response, SIG SAUER defines "drop safe" to mean that the firearm complies with safety requirements for abusive mishandling of a firearm, including by dropping the firearm. SIG SAUER further objects to this interrogatory to the extent it suggests the Subject Pistol was "accidentally dropped from three feet or lower" in the Subject Incident. Discovery and SIG SAUER's investigation in this matter are ongoing, and it has not been determined how the Subject Incident occurred.

2.    Has SIG represented in marketing materials for the P320 that end users of the commercial version of the weapon would not have to worry about the weapon being drop safe, with or without a tabbed trigger safety.

**RESPONSE**:  Subject to and without waiving its objections, SIG SAUER responds that the P320 model pistol was tested to and met all U.S. safety standards for abusive mishandling of firearms, including, but not limited to, the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Handgun Standard.  Each of these standards includes a drop safety requirement and test standard that firearms must pass to comply with the standard.  (*See* NIJ Standard 0112.03, at § 4.7 and § 5.7; ANSI/SAAMI Z299.5-2016, at § 5; CA DOD Handgun Standard, at § 4060(f).)  These standards were developed to specify "performance and other requirements equipment should meet to satisfy the needs of criminal justice agencies for high quality service." (*see* NIJ Standard 0112.03 at iii) and to specify "[t]est parameters [which] simulate conditions where abusive mishandling could possibly result in accidental discharge" (*see* ANSI/SAAMI Z299.5-2016, at Foreword).  SIG SAUER refers plaintiff to the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Handgun Standard, copies of which are being produced in connection with these responses.  In addition to these standards, Massachusetts and New York require guns sold or transferred into the state to meet certain performance requirements, including specified drop test requirements (*see* MA 940 CMR 16.00; N.Y. Comp. Codes R. & Regs. tit. 9, § 482.6).  The P320 model pistol was tested to and met these standards as well.

SIG SAUER further responds that as with any mechanical device, exposure to acute conditions such as shock, vibration, heavy or repeated drops, may have a negative effect on a firearm's mechanical safeties and should be avoided as part of safe firearm handling practices.  Therefore, SIG SAUER warns all users that: "All SIG SAUER pistols incorporate effective mechanical safeties to ensure they only fire when the trigger is pressed.  However, precautions should always be taken to avoid dropping a loaded firearm.  Although extremely unlikely, it is still possible for any loaded firearm to discharge when dropped."  *See* P320 Owner's Manual at p. 25.

SIG SAUER further responds that the information on its website states:

**SAFETY WITHOUT COMPROMISE.**

Safety isn't negotiable. The P320 maximizes peace of mind with a robust safety system. Never again will you need to pull the trigger to disassemble your pistol. And, while available as an option, you won't need a tabbed trigger safety for your gun to be drop safe.

Additionally, at the time of the Subject Incident, SIG SAUER warned users, including plaintiff, that the P320 may discharge if dropped:



⚠ **WARNING  – DROPPED PISTOL**

If dropped, the pistol may fire. Keep the chamber empty unless actually firing!

**ANY FIREARM MAY FIRE IF DROPPED**

**SIG SAUER objects to this interrogatory on the grounds that it misstates the information provided to users by SIG SAUER.  SIG SAUER further objects to this interrogatory as vague and ambiguous because the term "drop safe" is undefined.  For purposes of this response, SIG SAUER defines "drop safe" to mean that the firearm complies with safety requirements for abusive mishandling of a firearm, including by dropping the firearm.**

3.    What was the weight of the P320 trigger mechanism as of January 5, 2017 for civilian and law enforcement users of the weapon.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that the weight of the standard trigger sold with the commercial P320 model pistol was 17.17 grams.**

**SIG SAUER objects to this interrogatory on the grounds that it is vague and ambiguous because the term "P320 trigger mechanism" is not defined and the type of trigger is not identified.  For purposes of its response, SIG SAUER will define "P320 trigger mechanism" to refer to the standard trigger sold with the commercial P320 model pistol.**

4.    What is the current weight of the P320 upgraded trigger mechanism since SIG announced the voluntary upgrade of the weapon in August 2017.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that the weight of the P320 trigger that has undergone the P320 Voluntary Upgrade Program is 11.24 grams.**

**SIG SAUER objects to this interrogatory on the grounds that it is vague and ambiguous because the term "P320 upgraded trigger mechanism" is not defined.  For purposes of this response SIG SAUER defines "P320 upgraded trigger mechanism" to refer to the updated trigger that is installed as part of SIG SAUER's P320 Voluntary Upgrade Program.**

5.    Since the August 2017 voluntary upgrade was announced, have any SIG executives, employees or agents verbally or in writing informed owners of the commercial version of the P320 that it is safe, and does not need to be shipped back for modifications.

**RESPONSE: SIG SAUER's communications to the commercial marketplace is set forth in its information regarding the P320 Voluntary Upgrade Program, which is included on SIG SAUER's website at:**

**https://www.sigsauer.com/support/p320-voluntary-upgrade/.**

6.    Identify the author of the following statement in SIG's marketing materials regarding the P320: "Safety isn't negotiable.  The P320 maximizes peace of mind with a robust safety

system.  Never again will you need to pull the trigger to disassemble your pistol.  And, while available as an option, you won't need a tabbed trigger safety for your gun to be drop safe."

**RESPONSE**: **SIG SAUER responds that the language referenced in this interrogatory was drafted with collective input from SIG SAUER's marketing department and engineering department, with input from legal counsel.**

7.      Identify the author of the following statement on page 25 of SIG's user manual for the P320: "If dropped, the pistol may fire.  Keep the chamber empty unless actually firing!"

**RESPONSE**:  **SIG SAUER responds that the language referenced in this interrogatory was drafted by SIG SAUER's engineering department with the input from legal counsel.**

8.      State the number of commercial versions of the P320 that have been sold by SIG to civilians and any and all law enforcement agencies in the United States, from the date it was first made available for sale, to the present day.

**RESPONSE**: **Subject to and without waiving its objections, SIG SAUER responds that approximately 194,036 P320 model pistols were sold to the commercial and law enforcement markets prior to January 5, 2017.**

**SIG SAUER objects to this interrogatory on the grounds that it is vague and ambiguous because the term "commercial versions" is not defined.  For purposes of this response, SIG SAUER will define "commercial versions" to include all**

**configurations of P320 model pistols sold to the commercial and law enforcement markets.  SIG SAUER further objects to this interrogatory on the grounds that the information sought is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.  SIG SAUER further objects to this interrogatory to the extent it seeks information about sales after the date of the Subject Incident on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

9.      State the gross profit on sales of the commercial version of the P320 from the time it was made available for sale to the present day.

**RESPONSE**: **SIG SAUER objects to this interrogatory on the grounds that the information sought is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

10.     Identify by number, date and location all accidental discharge incidents involving the P320 to date including, but not limited to, drop fires or inadvertent discharges.

   **RESPONSE: Without waiving its objections, SIG SAUER responds that it was not aware of any alleged drop-fire incidents involving a P320 model pistol prior to the date of the Subject Incident.  Subsequent to the date of the Subject Incident, SIG SAUER**

has been notified of the following alleged drop-fire incidents involving a P320 model pistol:

1. February 28, 2017 – University of Cincinnati Police Department;

2. June 14, 2017 – Wilsonville, OR;

3. June 20, 2017 – Howell Township, NJ Police Department;

4. July 28, 2017 – Tarrant County, TX; and

5. November 12, 2017 – Tyler, TX.

SIG SAUER further objects to this interrogatory to the extent it seeks information about alleged drop-fire incidents that SIG SAUER was not made aware of prior to the date of the Subject Incident on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. SIG SAUER has provided information regarding alleged drop fire issues that occurred after the date of the Subject Incident, but in doing so, SIG SAUER explicitly reserves its right to object to the admissibility of this information.  SIG SAUER further objects to this interrogatory to the extent it seeks information about discharges that are different from the Subject Incident, where plaintiff alleges that the Subject P320 Pistol discharged upon impacting the ground when plaintiff dropped it, on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.

11.    Identify the amount of any and all settlement payments, and/or replacement weapons provided, to date regarding such incidents responsive to interrogatory 10.

**RESPONSE: SIG SAUER objects to this interrogatory on the grounds that it seeks information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.  SIG SAUER further objects to this interrogatory to the extent it seeks information covered by a confidentiality agreement between the parties.**

12.    State why SIG informed purchasers of the P320 that it is drop safe with or without a tabbed trigger safety.

**RESPONSE: Subject to and without waiving its objections, SIG SAUER responds that the P320 model pistol was tested to and met all U.S. safety standards for abusive mishandling of firearms, including, but not limited to, the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Handgun Standard.  Each of these standards includes a drop safety requirement and test standard that firearms must pass to comply with the standard.  (*See* NIJ Standard 0112.03, at § 4.7 and § 5.7; ANSI/SAAMI Z299.5-2016, at § 5; CA DOD Handgun Standard, at § 4060(f).)  These standards were developed to specify "performance and other requirements equipment should meet to satisfy the needs of criminal justice agencies for high quality service."  (*see* NIJ Standard 0112.03 at iii) and to specify "[t]est parameters [which] simulate conditions where abusive mishandling could possibly result in**

accidental discharge" (*see* ANSI/SAAMI Z299.5-2016, at Foreword).  SIG SAUER refers plaintiff to the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Handgun Standard, copies of which are being produced in connection with these responses.  In addition to these standards, Massachusetts and New York require guns sold or transferred into the state to meet certain performance requirements, including specified drop test requirements (*see* MA 940 CMR 16.00; N.Y. Comp. Codes R. & Regs. tit. 9, § 482.6).  The P320 model pistol was tested to and met these standards as well.

SIG SAUER further responds that as with any mechanical device, exposure to acute conditions such as shock, vibration, heavy or repeated drops, may have a negative effect on a firearm's mechanical safeties and should be avoided as part of safe firearm handling practices.  Therefore, SIG SAUER warns all users that: "All SIG SAUER pistols incorporate effective mechanical safeties to ensure they only fire when the trigger is pressed.  However, precautions should always be taken to avoid dropping a loaded firearm.  Although extremely unlikely, it is still possible for any loaded firearm to discharge when dropped."  *See* P320 Owner's Manual at p. 25.

SIG SAUER further responds that the information on its website states:



14

Additionally, at the time of the Subject Incident, SIG SAUER warned users, including

plaintiff, that the P320 may discharge if dropped:



SIG SAUER objects to this interrogatory on the grounds that it is vague and

ambiguous in that it mischaracterizes statements made by SIG SAUER in its materials

about the P320 model pistol. SIG SAUER further objects to this interrogatory as vague

and ambiguous because the term "drop safe" is undefined. For purposes of this

response, SIG SAUER defines "drop safe" to mean that the firearm complies with safety

requirements for abusive mishandling of a firearm, including by dropping the firearm.

13.    Identify by number and location all prior incidents of accidental discharges including,

but not limited to, drop fires, involving SIG semi-automatic pistols for the last seven years,

and any fatalities or injuries resulting therefrom.

**RESPONSE:  Without waiving its objections, SIG SAUER responds that it was not**

**aware of any alleged drop-fire incidents involving a P320 model pistol prior to the**

date of the Subject Incident. Subsequent to the date of the Subject Incident, SIG SAUER has been notified of the following alleged drop-fire incidents involving a P320 model pistol:

1.   February 28, 2017 – University of Cincinnati Police Department;

2.   June 14, 2017 – Wilsonville, OR;

3.   June 20, 2017 – Howell Township, NJ Police Department;

4.   July 28, 2017 – Tarrant County, TX; and

5.   November 12, 2017 – Tyler, TX.

SIG SAUER objects to this interrogatory to the extent it seeks information about accidental discharges involving firearms other than the P320 model pistol on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.

SIG SAUER further objects to this interrogatory to the extent it seeks information about alleged drop-fire incidents involving P320 model pistols that SIG SAUER was not made aware of prior to the date of the Subject Incident on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. SIG SAUER has provided information regarding alleged drop fire issues that occurred after the date of the Subject Incident, but in doing so, SIG SAUER explicitly reserves its right to object to the admissibility of this information.

**SIG SAUER further objects to this interrogatory to the extent it seeks information about discharges that are different from the Subject Incident, where plaintiff alleges that the Subject P320 Pistol discharged upon impacting the ground when plaintiff dropped it, on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

14.     State whether SIG took the incidents referenced in interrogatory 13 into account in the process of developing, designing and manufacturing the P320, and representing to the general public and law enforcement agencies that it is drop safe, with or without a tabbed trigger safety.  If the response is "no," why.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that as with all of its firearms, in developing, designing and manufacturing the P320 model pistol, SIG SAUER considered information from numerous various sources.  Incidents that may have allegedly occurred with other firearms were not directly relevant to the development, design and manufacture of the P320, but they are part of SIG SAUER's overall experience.  In representing that the P320 pistol is drop safe, SIG SAUER relied on the fact that the P320 model pistol was tested to and met all U.S. safety standards for abusive mishandling of firearms, including, but not limited to, the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Handgun Standard.  Each of these standards includes a drop safety requirement and test standard that firearms must**

pass to comply with the standard.  (*See* NIJ Standard 0112.03, at § 4.7 and § 5.7; ANSI/SAAMI Z299.5-2016, at § 5; CA DOD Handgun Standard, at § 4060(f).)  These standards were developed to specify "performance and other requirements equipment should meet to satisfy the needs of criminal justice agencies for high quality service."  (*see* NIJ Standard 0112.03 at iii) and to specify "[t]est parameters [which] simulate conditions where abusive mishandling could possibly result in accidental discharge" (*see* ANSI/SAAMI Z299.5-2016, at Foreword).  SIG SAUER refers plaintiff to the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Handgun Standard, copies of which are being produced in connection with these responses.  In addition to these standards, Massachusetts and New York require guns sold or transferred into the state to meet certain performance requirements, including specified drop test requirements (*see* MA 940 CMR 16.00; N.Y. Comp. Codes R. & Regs. tit. 9, § 482.6).  The P320 model pistol was tested to and met these standards as well.

SIG SAUER further responds that as with any mechanical device, exposure to acute conditions such as shock, vibration, heavy or repeated drops, may have a negative effect on a firearm's mechanical safeties and should be avoided as part of safe firearm handling practices.  Therefore, SIG SAUER warns all users that: "All SIG SAUER pistols incorporate effective mechanical safeties to ensure they only fire when the trigger is pressed.  However, precautions should always be taken to avoid dropping a

loaded firearm. Although extremely unlikely, it is still possible for any loaded firearm to discharge when dropped." *See* P320 Owner's Manual at p. 25.

SIG SAUER further responds that the information on its website states:



Additionally, at the time of the Subject Incident, SIG SAUER warned users, including plaintiff, that the P320 may discharge if dropped:

SIG SAUER objects to this interrogatory on the grounds that it is vague and ambiguous because it does not define what taking other incidents "into account" means. SIG SAUER further objects to this interrogatory as vague and ambiguous because the term "drop safe" is undefined. For purposes of this response, SIG SAUER defines "drop safe" to mean that the firearm complies with safety requirements for abusive mishandling of a firearm, including by dropping the firearm.

15.    State whether SIG at any time performed any drop testing on the P320 beyond the testing parameters contained in the SAAMI, ANSI and NIJ manuals.

**RESPONSE**: **Subject to and without waiving its objections, SIG SAUER responds that it performed drop testing under standards or protocols other than the NIJ Standard 0112.03 and ANSI/SAAMI Z299.5-2016.**

**SIG SAUER objects to this interrogatory on the grounds that it is vague and ambiguous because the phrase "beyond the testing parameters contained in the SAAMI, ANSI and NIJ manuals" is not defined.  SIG SAUER further objects to this interrogatory to the extent it seeks information about testing performed after the date of the Subject Incident on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

16.    State whether SIG hammer-fired pistols are more, less or equally prone to accidental discharges than the striker-fired P320.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that a comparison of the likelihood of accidental discharge between different model pistols cannot be stated without identification of the circumstances of the potential discharge, including but not limited to the user's conduct and handling of the pistol, the model and configuration of the pistols being compared and the condition of the pistol, among other factors.**

**SIG SAUER objects to this interrogatory on the grounds that it is vague and ambiguous because the circumstances of the discharge and details of the pistols being compared are not defined.**

17.    State whether any SIG executives, employees or agents ever expressed, verbally or in writing, any concerns regarding the safety of the P320 before, or after, it was released to general public and law enforcement agencies for sale.  If the answer is "yes," identify the individual(s) by name and state his or her last known address.

**<u>RESPONSE</u>:  Subject to and without waiving its objections, SIG SAUER responds that it is not currently aware of any SIG employees expressing concern about the safety of the P320 model pistol from a drop safety perspective prior to the date of the Subject Incident.**

**SIG SAUER objects to this interrogatory to the extent it seeks information about conditions or circumstances that are different from the issue presented in this litigation, an alleged drop-fire incident involving the Subject P320 Pistol when plaintiff dropped the pistol to the ground, on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. SIG SAUER further objects to this interrogatory to the extent it seeks information or communications that post-date the Subject Incident on the grounds that such**

**information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

18.    State whether the drop safety protocols of the United States Army SIG was required to pass before obtaining in January 2017 the contract to replace the Beretta M9 were more or less extensive than those contained in the SAAMI, ANSI and NIJ manuals.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that the U.S. Army required its handguns to comply with Test Operations Procedure (TOP) 3-2-045.  Among the requirements included in TOP 3-2-045 is a Rough Handling Test, which states:**

4.10  Rough Handling Test.

4.10.1 Background.  This test is designed to simulate the rough handling experienced by small arms in use by an individual Soldier.  Tactical transportation is represented by a loose cargo test to simulate carrying an unpackaged or unsecured weapon in a vehicle.  The test includes a 1.5-meter (5 ft) drop to represent accidentally dropping the weapon during combat or during mounting/dismounting operations.  Rough handling of materiel used to mount or support the weapon during operations (attached bipods, tripods, etc.) is simulated by a series of drops.

    These tests are likely to damage the test items; therefore, they should be done near the end of the overall test sequence.

CAUTION:  These tests are conducted with a primed but otherwise empty cartridge case.  Eye protection must be provided for protection from the possible firing of the primer.

**Section 4.10.2 of TOP 3-2-045 describes the drop test portion of the Rough Handling Test as follows:**

b. 1.5 Meter (5 Ft) Drop.

(1) Use three serviceable weapons for this test. Load each weapon with a primed but otherwise empty cartridge case to assess the possibility of accidental firing. Place the safety switch in the Safe position.

(2) Drop each weapon one time in each of the following orientations:

| 1 | Major axis horizontal (normal firing orientation). |
| 2 | Major axis vertical, butt down. |
| 3 | Major axis vertical, muzzle down. |
| 4 | Major axis 45° from vertical, butt down. |
| 5 | Major axis 45° from vertical, muzzle down. |

(3) Drop the weapons onto a clean, level, concrete surface. They may be dropped by a mechanical means or by manually releasing them in the required orientation. Verify the proper impact orientation by video recording (preferred), or by careful visual observation, or photographic records.

(4) Inspect the weapons after each drop. Ascertain the position of the safety switch and check to see if the primed cartridge case has fired. Record all damages and all maintenance required. Conduct a firing test if the serviceability of the weapons is questionable.

**SIG SAUER objects to this interrogatory on the grounds that the information sought is neither relevant nor reasonably likely to lead to the discovery of admissible evidence because the P320 model pistol tested and sold to the U.S. Army was a different configuration from the P320 model pistol sold to the commercial and law enforcement markets. SIG SAUER further objects to this interrogatory on the grounds that it is vague and ambiguous because the phrase "more or less extensive" is not defined. The drop test requirements among the various standards differ in certain respects, and it is not clear how plaintiff is defining whether one is more or less extensive than the other.**

19.    State whether the P320 failed any drop testing protocols of any United States-based or foreign government agency and, if so, the date and agency responsible for such testing.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that it was not aware of any failures of any testing protocols implemented by any entity on the P320 model pistol prior to the date of the Subject Incident.**

**SIG SAUER objects to this interrogatory to the extent it seeks information about purported drop test failures that SIG SAUER was informed of after the date of the Subject Incident on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.  SIG SAUER further objects to this interrogatory to the extent it seeks information about P320 model pistols that were a different from the Subject P320 Pistol in design or configuration on the grounds that such information is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.  SIG SAUER further objects to this interrogatory to the extent it seeks information about P320 model pistols that were tested under test protocols other than what the Subject P320 Pistol was tested to on the grounds that such evidence is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

20.    State why the tabbed trigger safety for the P320 was made optional instead of standard.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that the P320 model pistol that has not been subjected to the P320 Voluntary Upgrade Program meets and exceeds all U.S. safety standards, including the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Standard, among others.  The tabbed trigger is incorporated in some pistols that compete with the P320 pistol to support their ability to meet abusive mishandling standards.  While the P320 meets the abusive mishandling standards without the tabbed trigger, it is offered as an option for those individuals or agencies that may choose to incorporate it.**

**SIG SAUER objects to this interrogatory on the grounds that it seeks information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

21.    State the number of P320 pistols that have been shipped back to SIG pursuant to the August 2017 voluntary upgrade, and the cost to date for SIG to modify those pistols, including shipping, labor and parts.

**RESPONSE:  SIG SAUER objects to this interrogatory on the grounds that the information sought is overbroad, unduly burdensome and is neither relevant nor reasonably likely to lead to the discovery of admissible evidence because the**

**Voluntary Upgrade Program was not put into place until after the date of the Subject Incident.  SIG SAUER further objects to this interrogatory because the cost of implementing the Voluntary Upgrade Program has no relevance to the issues presented by this litigation.**

22.    State whether on August 8, 2017 SIG CEO Ronald Cohen stated "no gun is drop safe."

**<u>RESPONSE</u>:  Subject to and without waiving its objections, SIG SAUER refers plaintiff to the multiple press-statements submitted by SIG SAUER regarding the P320 model pistol.  SIG SAUER further directs plaintiff to the P320 Owner's Manual, which states: "All SIG SAUER pistols incorporate effective mechanical safeties to ensure they only fire when the trigger is pressed.  However, precautions should always be taken to avoid dropping a loaded firearm.  Although extremely unlikely, it is still possible for any loaded firearm to discharge when dropped."**

**SIG SAUER objects to this interrogatory on the grounds that the information sought is neither relevant nor reasonably likely to lead to the discovery of admissible evidence because the statement attributed to Mr. Cohen post-dates the date of the Subject Incident.  SIG SAUER further objects to this interrogatory to the extent it seeks to take only a portion of multiple statements Mr. Cohen has made about the P320 model pistol without putting the statement into its full context.**

23.    State whether law enforcement officers should carry any non-upgraded SIG P320 with a chambered round when on duty.  If the response is "yes," is the weapon drop safe with a chambered round.

**RESPONSE:  Subject to and without waiving its objections, SIG SAUER responds that it is up to law enforcement agencies to determine how their officers should carry their weapons while on duty.  SIG SAUER recognizes the need for law enforcement officers' weapons to be ready to fire while they are on duty.  The P320 model pistol that has not been subjected to the P320 Voluntary Upgrade Program meets and exceeds all U.S. safety standards, including the NIJ Standard 0112.03, ANSI/SAAMI Z299.5-2016, and the CA DOD Standard, among others.**

**SIG SAUER further responds that as with any mechanical device, exposure to acute conditions such as shock, vibration, heavy or repeated drops, may have a negative effect on a firearm's mechanical safeties and should be avoided as part of safe firearm handling practices.  SIG SAUER warns all users that: "All SIG SAUER pistols incorporate effective mechanical safeties to ensure they only fire when the trigger is pressed.  However, precautions should always be taken to avoid dropping a loaded firearm.  Although extremely unlikely, it is still possible for any loaded firearm to discharge when dropped."  *See* P320 Owner's Manual at p. 25.  Therefore, when carrying a firearm that is loaded with a round in the chamber, law enforcement officers must take all reasonable safety precautions to prevent any unintended**

discharge of their weapons. Moreover, all users should practice safe handling procedures when transporting a firearm in an unsecured manner by ensuring that the firearm is not loaded.

SIG SAUER objects to this interrogatory on the grounds that it presents an incomplete hypothetical. SIG SAUER further objects to this interrogatory on the grounds that the information sought is neither relevant nor reasonably likely to lead to the discovery of admissible evidence because plaintiff was not carrying the Subject P320 Pistol while on duty at the time of the Subject Incident. Rather, he was transporting the Subject P320 Pistol in an unsecured condition.

Dated: February 21, 2018
      Purchase, New York          Yours truly,

By: _____
       Robert L. Joyce, Esq.
       LITTLETON PARK JOYCE UGHETTA & KELLY LLP
       The Centre at Purchase
       4 Manhattanville Road, Suite 202
       Purchase, New York 10577
       Tel: (914) 417-3400
       robert.joyce@littletonpark.com

       Anthony J. Natale, Esq.
       NATALE & WOLINETZ
       Federal Bar No. ct08451
       116 Oak Street
       Glastonbury, Connecticut 06033
       Tel: (860) 430-1802
       anatale@natalelawfirm.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VINCENT A. SHEPERIS,

           Plaintiff,

THE CITY OF STAMFORD,
           Intervening Plaintiff,

    v.

SIG SAUER, INC.,

           Defendant.

CIVIL ACTION NO.:

3:17-CV-01318-JCH

## VERIFICATION

STATE OF NEW HAMPSHIRE

COUNTY OF ROCKINGHAM

BEFORE ME, the undersigned authority, on this day personally appeared Steven Shawver, who, being first duly sworn by me, upon his oath, deposed and stated that he has read the Responses and Objections to Plaintiff's First Set of Interrogatories, that certain answers are based on information obtained from other persons or entities, but that the Responses are true and correct to the best of his knowledge, information and belief.

_____
Signature

STEVEN SHAWVER
Printed Name

SUBSCRIBED AND SWORN TO BEFORE ME this 20ᵗʰ day of February, 2018, to certify which witness my hand and seal of office.

_____
Notary Public

My Commission Expires:

9-3-19