| | |
|---|---|
| **From:** | Jeff Bagnell |
| **To:** | Joyce, Robert; Gibson, Keith |
| **Cc:** | Lee, Dana |
| **Subject:** | Sheperis v. Sig Sauer, Inc. |
| **Date:** | Wednesday, April 4, 2018 3:35:00 PM |

Gentlemen, pursuant to D. Conn. Local Civil Rule 37(a), I'm writing to address deficiencies in your client's discovery responses dated February 20, 2018. I have held off on doing this in good faith in light of the pending second mediation and possibility of a prompt settlement; however, it is unclear to me when that will take place, and didn't happen in February due to the Judge having the flu. I'll attempt to confer with you by telephone this or next week, as required by the Rule. To help the conversation I am setting forth the inadequate or evasive responses to my client's discovery requests in order.

As you know, Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as reaching all information that is relevant but not privileged. For discovery purposes, courts define relevance broadly, regarding information as relevant if it "bears on" or might reasonably lead to information that "bears on" any material fact or issue in the action. See Openheimer Fund, Inc. v. Sanders,437 U.S. at 351; see also El Badrawi v. Dept. of Homeland Sec., 258 F.R.D. 198, 201-02 (D.Conn.2009).

Pursuant to Rule 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The term "relevance" is construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." James v. Tilghman, 194 F.R.D. 398, 400 (D.Conn.1999) (quoting Oppenheimer Fund, 437 U.S. 340, 351 (1978)). The party receiving a request must not only produce information which is admissible as evidence, but also information which "appears reasonably calculated to lead to admissible

evidence." James, 194 F.R.D. at 400."When a party seeks relevant discovery, the party resisting discovery bears the burden of establishing the factual basis for withholding the requested discovery." Abu-Nassar v. Elders Futures, Inc., 1991 WL 45062, at *15. See also United States v. Schwimmer, 892 F.2d 237, 244 (2d Cir.1989); vonBulow by Auersperg v. vonBulow, 811 F.2d 136, 144 (2d Cir.), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); In re Grand Jury Subpoena Dated Jan.4, 1984, 750 F.2d 223, 224-25 (2d Cir.1984). This burden requires an evidentiary showing by competent evidence; see, e.g., Abu-Nassar, 1991 WL 45062, at *15; vonBulow by Auersperg, 811 F.2d at 144; and cannot be discharged by mere conclusory or ipse dixit assertions. Abu-Nassar, 1991 WL 45062, at *15: In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d at225. "When the relevancy of a discovery request has been demonstrated, the party claiming that a discovery request is overbroad or burdensome 'must show specifically ... how each question [or request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden. The court is not required to sift each interrogatory [or request] to determine the usefulness of the answer [or documents] sought.'" Abu-Nassar v. Elders Futures, Inc., 1991 WL45062, at *17 (quoting Compagnie Francaised'Asurrance, 105 F.R.D. at 42).

    First, with respect to your client's response to Sheperis's Interrogatories, I itemize the following inadequate, incomplete and/or evasive responses:

1.    Interrogatory 2: This interrogatory asks a simple question: "Has SIG represented in marketing materials for the P320 that end users of the commercial version of the weapon would not have to worry about [it] being drop safe, with or without a tabbed trigger safety." Instead of providing a simple Yes or No answer, your client recites a meandering litany of drop testing protocols, and states that the P320 met those protocols. The interrogatory itself however is never answered. SIG also asserts that the interrogatory "misstates information" and is "vague and ambiguous because the term 'drop safe' is undefined." SIG goes on to provide its own argumentative definition of what "drop safe" - - a term which SIG itself uses in

its marketing materials - - yet still does not answer the question.

2.   Interrogatory 5:   The question contained in this interrogatory is entirely and obviously evaded, and not answered. Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

3.   Interrogatory 8:  The interrogatory asks for the total number of P320 pistols sold from the date it was first made available for sale, to the present day. Your client partially answers this question, stating that 194,036 P320s have been sold, but then arbitrarily limits the timeframe to January 5, 2017. The question asks the total number sold from the beginning to the present date, not January 5, 2017. Your client asserts the boilerplate objection that the interrogatory is "neither relevant nor likely to lead to the discovery of admissible evidence." This is absurd, however, given that one of key issues in the case is, and will be, the details and results of the "voluntary upgrade" program SIG announced after the case was filed in August 2017. The total number of non-upgraded P320s in circulation is not only relevant information (as you know, an extremely low evidentiary burden in discovery), but it will be in all likelihood easily admissible information at trial.

   Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

4.   Interrogatory 9:  The interrogatory asks for the gross profit on sales of the commercial version of the P320 "from the time it was made available for sale to the present day." Your client refuses to answer this interrogatory at all, and instead asserts the boilerplate objection that "the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." The gross profit is obviously relevant to Sheperis's claims, which is that SIG ignored safety issues out of concern for profit. You can argue against its admission at trial if you wish, but it's not credible to claim it isn't "relevant" in discovery.

   Accordingly, before moving to compel an adequate response, we ask that you amend

your client's response to this interrogatory.

5.  Interrogatory 10:  The interrogatory asks for the total number of accidental discharges of the P320 to date; it doesn't ask merely for the number of drop fire incidents.  Your client arbitrarily limits its answer to the number of drop fires, instead of the total number of accidental discharges of whatever type.  This is obviously relevant information under Rule 26 in view of the allegations of the Amended Complaint.

Your client has in fact put the overall number of accidental discharges at issue, by stating that not merely "heavy or repeated drops" may cause the P320 to fire (which mis-states the nature of the accidental drop in this case), but mere "vibration" and "shock," terms which are nowhere defined.  Sheperis has stated in his prayer for relief that SIG issue an unambiguous warning to all purchasers of the P320 stating not merely that the weapon is not drop safe with a chambered round, but "can fire without a trigger pull."  Data regarding how many times that has happened, whether by an accidental drop or otherwise, since the P320 was introduced into commerce to the present day is obviously information relevant to his claims under Rule 26.

Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

6.  Interrogatory 6.  The interrogatory asks that your client identify the amount of any and all settlement payments regarding accidental discharges of the P320.  Your client simply refuses to answer, claiming that the information is "confidential" and, again, "neither relevant nor likely to lead to the discovery of admissible evidence."  This is obviously a judicial proceeding, and the Court has the power to order the disclosure of these agreements.  They could not possibly be more relevant to Sheperis's claims in the case.  If you wish to mark the information as confidential, you may do so, pursuant to the agreement we already have in place.   Regardless, the mere existence of any confidentiality terms in settlement agreements does not immunize SIG from its duty to disclose the information in a lawsuit.

Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

7. Interrogatory 13. The interrogatory asks for the total number of all accidental discharges involving SIG semi-automatic pistols in the last seven years, and "any fatalities or injuries resulting therefrom." In short, your client entirely refuses to answer, stating that information regarding other SIG pistol models is not "relevant" to Sheperis's claims. It is of course very relevant to his claims - - that SIG deceptively and recklessly marketed the P320 as drop safe and unable to fire without a trigger pull - - which shows that SIG itself was familiar with the issue of accidental discharges well before and after the P320 was put into commerce. SIG's experience with accidental discharges in other SIG pistol models pre-dating the P320, what it learned from these incidents and how it reacted to them from a design and manufacturing standpoint, is obviously intertwined with its bold declarations that the P320 is drop safe without a trigger safety, that no one has to worry about that, and that it will only fire when the user wants it to. Whether this information is admissible at trial will be up to the Judge. In discovery, however, SIG cannot withhold this information.

Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

8. Interrogatory 14. The interrogatory simply asks whether SIG took into account accidental discharges of pistol models pre-dating the P320 in "developing, designing and manufacturing the P320." It further states, "If the response is 'no,' why." Your client refuses to answer, and instead offers its boilerplate long and evasive response to prior interrogatories. It is a simple question and is directly relevant to Sheperis's claims and SIG's own representations that the P320 is drop safe and won't fire unless the trigger is pulled.

Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

9. Interrogatory 15. The interrogatory simply asks whether SIG performed any drop testing on the P320 beyond the parameters contained in the SAAMI, ANSI and NIJ manuals.

Your client refuses to answer, claiming that the information, again, is not relevant to the lawsuit. Given that Sheperis expressly asserts in his Amended Complaint that the testing protocols of these private agencies are known to be outdated and inadequate, and videotape evidence showing SIG employees stating that testing beyond these parameters was conducted, it must answer the question in discovery.

Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

10. Interrogatory 17. The interrogatory simply asks whether any SIG executives, employee or agents ever expressed any concerns regarding the safety of the P320, before or after it was released for sale to the public. Your client again entirely refuses to answer, and I note that not a single email or other document has been produced to date which show any SIG executive communicating with anyone about the safety of the P320 - - even after the January 5, 2017 incident. Not one. In any case, this is a simple question, entirely relevant to Sheperis's claims, which SIG is fully capable of answering in a yes or no fashion.

Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

11. Interrogatory 19. We ask that this response be amended to delete the insertion of the language regarding maintaining general objections. It is impossible to tell if your client is forthrightly answering this interrogatory as long as objections are interposed.

12. Interrogatory 21. The interrogatory simply asks that SIG state the number of P320s that have been shipped back to it pursuant to the Voluntary Upgrade program announced in August 2017, and the cost involved to modify any pistols returned. Your client refuses outright to answer. I will not belabor how this information is obviously relevant to Sheperis's claims or your client's defenses.

Accordingly, before moving to compel an adequate response, we ask that you amend your client's response to this interrogatory.

I am preparing a reply to your client's responses to our production requests and will forward that to you promptly.

Jeffrey S. Bagnell
Jeffrey S. Bagnell, Esq., LLC
55 Greens Farms Road, #200-60
Westport, Connecticut 06880
m. (203) 984-8820
o. (203) 557-4083
jeff@bagnell-law.com
www.bagnell-law.com

IMPORTANT/CONFIDENTIAL: This message is intended only for the use of the
individual or entity to which it is addressed. This message contains information from the law office of Attorney Bagnell which may be privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify immediately.